UNION TANK LINE COMPANY *v.* WRIGHT, COMP-TROLLER GENERAL OF GEORGIA.

ERROR TO THE SUPREME COURT OF THE STATE OF GEORGIA.

No. 170.   Argued January 22, 1919.—Decided March 24, 1919.

A State may tax the movables of a foreign corporation, which are regularly and habitually employed therein, although devoted to interstate commerce. P. 282.

While the valuation must be just, it need not be limited to the mere worth of the articles taken separately, but may include as well the intangible value due to the organic relation of the property in the State to the whole system of which it is part. *Id.*

To meet the difficulties of appraisement where the tangibles constitute part of a going concern operating in many States, and where absolute accuracy is generally impossible, the court has sustained methods producing results approximately correct, for example, the mileage basis in the case of a telegraph company and the average amount of property habitually brought in and carried out by a car company. *Id. Western Union Telegraph Co.* v. *Massachusetts*, 125 U. S. 530; *American Refrigerator Transit Co.* v. *Hall*, 174 U. S. 70.

But if the plan pursued is arbitrary and the consequent valuation grossly excessive, it must be condemned because of conflict with the commerce clause, or the Fourteenth Amendment, or both. *Id.*

A New Jersey company owning many tank cars, rented by shippers, was assessed for those running in and out of Georgia, without regard to and much in excess of their real value, upon a track-mileage basis, *i. e.*, in an amount bearing the same ratio to the value of all its cars and other personal property as the ratio of the miles of railroad

over which the cars were run in Georgia to the total miles over which all were run, there and elsewhere. *Held*, that the rule adopted had no necessary relation to the real value in Georgia, and that the tax was void. P. 283. *Pullman's Palace Car Co.* v. *Pennsyl-. vania*, 141 U. S. 18, distinguished and limited.

What is said in an opinion upon a point not raised or properly involved cannot control in a subsequent case where the very point is presented for decision. P. 286.

143 Georgia, 765; 146 *id.;* 489, reversed.

THE case is stated in the opinion.

*Mr. Douglas Campbell* for plaintiff in error.

*Mr. Clifford Walker*, Attorney General of the State of Georgia, for defendant in error, submitted: *Mr. Warren Grice* and *Mr. Mark Bolding* were on the brief.

MR. JUSTICE MCREYNOLDS delivered the opinion of the court.

This cause requires us to consider the power of a State to lay and collect taxes upon instrumentalities of interstate commerce which move both within and without its jurisdiction.

Union Tank Line—plaintiff in error—an equipment company incorporated in New Jersey which has never carried on business or had an office in Georgia, owns twelve thousand tank cars suitable for transporting oil over railroads and rents them to shippers at agreed rates, based on size and capacity. The roads over which they move also pay therefor stipulated compensation. Under definite contract certain of these cars were furnished to the Standard Oil Company of Kentucky and all of those which came into Georgia were being operated by the Oil Company under such agreement. They were not permanently within that State but passed "in and out."

March 16, 1914, the Tank Line made the following tax return to the Comptroller General for 1913—

| | |
|---|---|
| Name of company.................. | Union Tank Line |
| Value of real estate owned by company in or out of Georgia......... | None |
| Number of miles of R. R. lines in Georgia over which . . cars are run........................... | 6976.5 |
| Total value of . . cars and . . other personal property [in Ga. & elsewhere]...................... | $10,518,333.16 |
| Value franchise [in Georgia]........ | No franchise |
| Total number of miles R. R. lines . over which . . cars are run [in Ga. & elsewhere]............ | 251,999 |
| Total value of property taxable in Georgia...................... | $47,310.00 |
| Union Tank Line Company had an average of 57 tank cars in Georgia during 1913 which at a value of $830 per car equals............. | $47,310.00 |

Defendant in error expressly admitted that the average number of cars in Georgia during 1913 was fifty-seven, the value of each being $830—total $47,310; that the owner had paid into the state treasury as taxes the full amount required on such valuation and during that year had no other property in the State. Acting upon information contained in return above quoted, the Comptroller General assessed the Tank Line's property for 1913 at $291,196, its franchise at $27,685; and demanded payment. In explanation of this action he wrote to it as follows:

"As to the return filed, you have furnished the data desired, but have made an error in the application of same. After giving the mileage for the Company everywhere

and for Georgia, you then go ahead and assign 57 tank cars for this State and value them at $830 each, making the total for Georgia $47,310. This is an incorrect method. If you were to be allowed to merely assign so many cars to the State for taxation there would be no need for the mileage figures to be furnished. The valuation to be assigned to Georgia must be in the same proportion to the valuation for the entire company, as the mileage in Georgia bears to the entire mileage everywhere. . . . Or to work it out by percentage instead of proportion: 6,976.5 the Georgia mileage, is 2.76846 per cent. of 251,999, the entire mileage. Georgia is therefore entitled to 2.76846 per cent. of the entire valuation. This per cent. of $10,518,333 is $291,195.84, or the same sum arrived at by proportion, if we call the 84 cents an even dollar. . . . A franchise value should also be returned. And whatever the valuation you place on the franchise for the entire country, 2.76846 per cent. of same must be assigned to Georgia. Thus, if you should value your franchise at $1,000,000, the franchise value to be assigned to Georgia would be $27,685."

"The valuation for Georgia was determined by taking 2.76846 per cent. of the valuation you gave for the entire company, exclusive of franchise. The 2.76846 per cent. is the ratio the Georgia mileage bears to the entire mileage, as explained in a previous letter. The franchise value was obtained by placing your franchise for the entire country at an even million dollars and giving Georgia 2.76846 per cent. thereof."

Thereupon, plaintiff in error instituted this proceeding in Fulton County Superior Court alleging invalidity of the assessment, that to enforce the tax would violate the Fourteenth Amendment, and asked appropriate relief. The cause was tried upon pleadings and agreed statement of facts. Among other things, the parties stipulated:

"On April 7, 1914, when the defendant entered an as-

sessment in his office of property and franchise of the plaintiff as shown hereinbefore, he had no other information for any of the years 1907 to 1914 inclusive than was contained in the said return filed by the plaintiff on March 16, 1914, and embraced in this statement and which was refused by the defendant, and did not know what cars defendant had had in Georgia during any of said named years nor did he ascertain the value of such cars, but his action was taken on such information hereinbefore shown; and that the assessment so entered by the defendant in his office against the plaintiff's property during said period for each of said years embraces the valuation of about three hundred cars in excess of what the plaintiff actually had in the State of Georgia, during said years of the approximate value of $250,000.00 each year; and that the true value of a tank car is about eight hundred and thirty ($830.00) dollars per car.

"That for the year 1914 the assessment entered against plaintiff by defendant covered the value of at least three hundred and fifty cars in excess of the number of cars plaintiff actually had in the State of Georgia for the time said tax was assessed.

"That defendant in entering said assessment never undertook to ascertain the actual property of plaintiff's located in the State of Georgia during the said years or to assess its property at its real value for taxation, otherwise than by simply ascertaining the percentage of its entire property shown by the ratio of the railroad traversed by its equipment in Georgia and the railroad mileage traversed by its equipment everywhere as shown by its said return filed on March 16, 1914."

The trial court adjudged the assessment good as to both franchise and physical property. The Supreme Court held no taxable franchise existed, but that the physical property had been assessed as required by statutes not in conflict with either state or Federal Constitution.   143

Georgia, 765, 769, 771, 773; 146 Georgia, 489. It said: "The case relates to two matters, namely: a tax assessment against tangible property of the company; and second, a claim of right to assess a franchise tax. . . . The effort was to tax property in this State, and in doing so to apply the statute designed as a rule to ascertain the property so coming into the State and its proper valuation." After quoting §§ 989, 990 and 1031, Civil Code of Georgia, copied in the margin,[1] the opinion con-

_____

[1] Civil Code of Georgia.

Sec. 989. "Each non-resident person or company whose sleeping-cars are run in this State shall be taxed as follows: Ascertain the whole number of miles of railroad over which such sleeping-cars are run, and ascertain the entire value of all sleeping-cars of such person or company, then tax such sleeping-cars at the regular tax rate imposed upon the property of this State in the same proportion to the entire value of such sleeping-cars that the length of lines in this State over which such cars are run bears to the length of lines of all railroads over which such sleeping-cars are run. The returns shall be made to the comptroller-general by the president, general agent, or person in control of such cars in this State. The comptroller-general shall frame such questions as will elicit the information sought, and answers thereto shall be made under oath. If the officers above referred to in the control of said sleeping-cars shall fail or refuse to answer, under oath, the questions so propounded, the comptroller-general shall obtain the information from such sources as he may, and he shall assess a double tax on such sleeping-cars. If the taxes herein provided for are not paid, the comptroller-general shall issue executions against the owners of such cars, which may be levied by the sheriff of any county of this State upon the sleeping-car or cars of the owner who has failed to pay the taxes."

Sec. 990. "Any person or persons, copartnership, company or corporation wherever organized or incorporated, whose principal business is furnishing or leasing any kind of railroad cars except dining, buffet, chair, parlor, palace, or sleeping-cars, or in whom the legal title in any such cars is vested, but which are operated, or leased, or hired to be operated on any railroads in this State, shall be deemed an equipment company. Every such company shall be required to make returns to the comptroller-general under the same laws of force in reference to the rolling stock owned by the railroads making returns in this State, and the assessment of taxes thereon shall be levied and the taxes col-

tinues—"The several code sections embody the statutory scheme for taxing cars of equipment companies whose cars are handled over the railroads in this State. Owing to the nature of the business, it is difficult to ascertain the number of cars of equipment companies that come into this State and designate the identity of each car or its value. The purpose of the statute is to provide a reasonable method for determining the fact that cars come into this State and the values thereof, to the end that the equipment companies allowing their cars to come into this State may bear their just proportion of taxes leviable in this State. The scheme of the statute is what is sometimes called the track-mileage basis of apportionment, or what in a more general way is termed the unit rule. The comptroller-general followed the statute. The unit rule has been upheld by the Supreme Court of the United States, in regard to railroads, telegraph companies, and sleeping-car companies. *Kentucky Railroad Tax Cases,* 115 U. S. 321; *Western Union Telegraph Company* v. *Massachusetts,* 125 U. S. 530; *Pullman's Palace Car Co.* v. *Pennsylvania,* 141 U. S. 18. And this principle of average has been approved in regard to refrigerator-cars. *American Refrigerator Transit Co.* v. *Hall,* 174 U. S. 70; *Union Refrigerator Transit Co.* v. *Lynch,* 177 U. S. 149. It has even been held that the unit rule of valuation could properly be applied to the valuation of property of express companies within a certain State, though there was no

lected in the same manner as provided in the case of sleeping-cars in section 989."

Sec. 1031. "Railroad companies operating railroads lying partly in this State and partly in other States shall be taxed as to the rolling stock thereof and other personal property appurtenant thereto, and which is not permanently located in any of the States through which said railroads pass, on so much of the whole value of rolling stock and personal property as is proportional to the length of the railroad in this State, without regard to the location of the head office of such railroad companies."

physical connection with property beyond the State. . . .
It seems to us, therefore, that the case falls within the
rule laid down by the Supreme Court of the United States,
as above mentioned, and that there are no such circum-
stances as to bring it within the ruling made in *Fargo* v.
*Hart*, 193 U. S. 490."

A State may not tax property belonging to a foreign
corporation which has never come within its borders—
to do so under any formula would violate the due process
clause of the Fourteenth Amendment. In so far, however,
as movables are regularly and habitually used and em-
ployed therein, they may be taxed by the State according
to their fair value along with other property subject to
its jurisdiction, although devoted to interstate commerce.
While the valuation must be just it need not be limited
to mere worth of the articles considered separately but
may include as well "the intangible value due to what
we have called the organic relation of the property in the
State to the whole system." How to appraise them fairly
when the tangibles constitute part of a going concern
operating in many States often presents grave difficulties;
and absolute accuracy is generally impossible. We have
accordingly sustained methods of appraisement producing
results approximately correct—for example, the mileage
basis in case of a telegraph company (*Western Union
Telegraph Co.* v. *Massachusetts*), and the average amount
of property habitually brought in and carried out by a
car company (*American Refrigerator Transit Co.* v. *Hall*).
But if the plan pursued is arbitrary and the consequent
valuation grossly excessive it must be condemned because
of conflict with the commerce clause or the Fourteenth
Amendment or both. *Western Union Telegraph Co.* v.
*Massachusetts*, 125 U. S. 530; *Marye* v. *Baltimore & Ohio
R. R. Co.*, 127 U. S. 117; *Pullman's Palace Car Co.* v.
*Pennsylvania*, 141 U. S. 18, 26; *Adams Express Co.* v.
*Ohio*, 165 U. S. 194; *s. c.*, 166 U. S. 185; *American Re-*

*frigerator Transit Co.* v. *Hall,* 174 U. S. 70; *Union Refrigerator Transit Co.* v. *Lynch,* 177 U. S. 149; *Fargo* v. *Hart,* 193 U. S. 490; *Cudahy Packing Co.* v. *Minnesota,* 246 U. S. 450, 453.

In the present case the Comptroller General made no effort to assess according to real value or otherwise than upon the ratio which miles of railroad in Georgia over which the cars moved bore to total mileage so traversed in all States. Real values—the essential aim—of property within a State cannot be ascertained with even approximate accuracy by such process; the rule adopted has no necessary relation thereto. During a year two or three cars might pass over every mile of railroad in one State while hundreds constantly employed in another moved over lines of less total length. Fifty-seven was the average number of cars within Georgia during 1913 and each had a "true" value of $830. Thus the total there subject to taxation amounted to $47,310—the challenged assessment specified $291,196.

We think plaintiff in error's property was appraised according to an arbitrary method which produced results wholly unreasonable and that to permit enforcement of the proposed tax would deprive it of property without due process of law and also unduly burden interstate commerce.

*Pullman's Palace Car Co.* v. *Pennsylvania, supra,* relied on by defendant in error, contains the following passage which seems to uphold the Georgia rule—"The mode which the State of Pennsylvania adopted, to ascertain the proportion of the company's property upon which it should be taxed in that State, was by taking as a basis of assessment such proportion of the capital stock of the company as the number of miles over which it ran cars within the State bore to the whole number of miles, in that and other States, over which its cars were run. This was a just and equitable method of assessment; and, if

it were adopted by all the States through which these cars ran, the company would be assessed upon the whole value of its capital stock, and no more." But the point therein spoken of was unnecessary to determination of the cause; and so far as the quoted passage sanctions the specified rule for ascertaining values as generally appropriate, just, unobjectionable and productive of conclusive results, it must be regarded as *obiter dictum,* and we cannot now approve or follow it.

Reference to the original record upon which that case came here will aid in understanding the exact issues presented. Pennsylvania demanded taxes of the Pullman Company, an Illinois corporation, for the years 1870 to 1880, upon such portion of its capital stock as total miles of railroad in Pennsylvania over which its cars moved bore to like total in all States. No statute prescribed the method of valuation; it had been adopted by executive officers. The Court of Common Pleas declared: "On the facts defendant claims that no part of its capital stock is invested in this State. The argument is that its cars are personal property, and, as they are not permanently located in this State, but pass into, through, and out of it, this personal property has no taxable situs in Pennsylvania, and could not be taxed specifically in any given locality; and therefore, it is contended, as the tax on capital stock is a tax on the property in which the capital is invested, the latter cannot be taxed. . . . We hold, therefore, that the proportion of the capital stock of the defendant invested and used in Pennsylvania is taxable under these acts, and that the amount of the tax may be properly ascertained by taking as a basis the proportion which the number of miles operated by defendant in this State bears to the whole number of miles operated by it, without regard to the question where any particular car or cars were used; . . . The defendant is liable to tax on the proportion of its capital stock invested in this State,

as represented by the coaches and cars owned and used by it here. . . . Determining the amount of the tax on the principle above stated, it is as follows: Tax for years 1870 to 1880, inclusive, $16,321.89." The Supreme Court affirmed this view, saying: "While the tax on the capital stock of the company 'is a tax on its property and assets,' yet the capital stock of a company and its property and assets are not identical. The coaches of the company are its property. They are operated within this State. They are daily passing from one end of the State to the other. They are used in performing the functions for which the corporation was created. The fact that they also are operated in other States cannot wholly exempt them from taxation here. It reduces the value of property in this State justly subject to taxation here. This was recognized in the court below, and we think the [proportion] preference was fixed according to a just and equitable rule."

In 1870 the Pullman Company's capital stock amounted to three million dollars, in 1880 it had grown to six million; all cars actually owned by the company (leased ones not included) during 1871, numbered 241, and in 1880, 472, their total value being $4,334,000, and $8,588,000 respectively; one hundred cars were operated within Pennsylvania during each of the eleven years; total miles of track everywhere passed over by the company cars during 1880 amounted to 57,099, within Pennsylvania 5,127, and these figures adequately represent the proportion for other years: total tax held due for the eleven years amounted to $16,321.89. While the record does not disclose the precise valuations upon which taxes were computed, enough does appear to show that they were far below (perhaps not one-third) the actual worth of a hundred cars.

The company demanded complete exemption upon the ground that its cars were moving in interstate commerce

and had no taxable situs in Pennsylvania. The appraisement was not challenged as excessive; if the property was taxable in Pennsylvania the rule adopted may have been decidedly favorable to the owner and the assessment a moderate one. Having failed to challenge amount of the assessment, the company could not well complain of the rule under which this was fixed. In such circumstances reasonableness of the rule was not really in question and what was said of it cannot control here where the very point is presented for decision. *Cohens* v. *Virginia*, 6 Wheat. 264, 399; *McCormick Machine Co.* v. *Aultman*, 169 U. S. 606, 611. See also *Adams Express Co.* v. *Ohio, supra.*

In other opinions of this court cited below to support the conclusion there reached we upheld the power of a State to tax property actually within its jurisdiction upon a fair valuation considered as part of a going concern—they give no sanction to arbitrary and inflated valuations. Taxes must follow realities, not mere deductions from inadequate or irrelevant data.

In *Fargo* v. *Hart, supra,* we condemned an assessment ostensibly proportioned to mileage where property without the State and unnecessary to the Express Company's actual business had been included; and we pointed out that under no formula can a State tax things wholly beyond its jurisdiction.

The same considerations which establish invalidity of the assessment of plaintiff in error's property for 1913 apply to like ones made by the Comptroller General for all other years in question.

Judgment of the court below must be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*


MR. JUSTICE DAY, in view of the undisputed facts of this case, concurs in the result.

275.   . PITNEY, BRANDEIS, and CLARKE, JJ., dissenting.

MR. JUSTICE PITNEY, with whom concurred MR. JUS-
TICE BRANDEIS and MR. JUSTICE CLARKE, dissenting.

During the period in controversy the Union Tank Line,
plaintiff in error, a New Jersey corporation, was the owner
of many tank cars, aggregating in value more than
$10,000,000, and was engaged in the business of renting
them out to be employed in transporting oil and similar
fluids over railroads throughout the United States ex-
tending to more than 250,000 miles.  In the course of its
business it made a contract with the Standard Oil Com-
pany of Kentucky to furnish to that corporation cars for
use in the transportation of oils and like fluids from depots
at Savannah, Georgia, and Jacksonville, Florida. · The
oils were brought to those depots chiefly in vessels by sea,
and were shipped thence in the Tank Line cars to various
destinations within and without the State of Georgia;
plaintiff in error being compensated in part by rentals
paid by the Standard Oil Company, based on size and
capacity of cars, and in part by payments received from
the railroad companies over whose lines the cars were
run; those companies, in lieu of providing their own tank
cars, paying to plaintiff in error three-fourths of a cent
per mile per car for the car movements.

Under the provisions of the Georgia statutes (Civil
Code, §§ 989, 990, 1031), property taxes were imposed upon
plaintiff in error by reason of the habitual use and em-
ployment of its rolling stock within that State, based
upon a valuation not limited to the value of the tank cars
as separate chattels, but considering their value as a part
of the entire system of cars owned and operated by plain-
tiff in error, and regarding these as a part of the equip-
ment of the railroads over which they ran.  Thus, it
appearing from a return made by the Tank Line to the
Comptroller General for the year 1913 that the number
of miles of railroad lines in Georgia over which its cars

were run was 6,976.5, and the total number of miles of railroad lines over which its cars were run in Georgia and elsewhere was 251,999, and that the total value of its cars and other personal property in Georgia and elsewhere was $10,518,333.16, the Comptroller General assigned to the State of Georgia for taxation the same proportion of the property value of the system of cars that the Georgia rail mileage bore to the total mileage. This gave a valuation of $291,195.84, whereas plaintiff in error had returned that during the same year it had an average of only 57 tank cars in Georgia, amounting, at a valuation of $830 per car, to $47,310.

The Supreme Court of Georgia sustained the tax on the authority of numerous decisions of this court, cited for the purpose. 143 Georgia, 765; 146 Georgia, 489. This court reverses the judgment, and holds the taxing law unconstitutional, upon reasoning to which I am unable to yield assent.

In my opinion the Georgia system of taxing movable property of this character when habitually employed in the State, and the decision of the state Supreme Court sustaining the particular taxes in question, are based upon a correct view of the powers of the State under the Federal Constitution, and are in entire harmony with principles laid down in authoritative decisions of this court which have remained unchallenged for more than a quarter of a century. *Western Union Telegraph Co.* v. *Massachusetts*, 125 U. S. 530, 552; *Marye* v. *Baltimore & Ohio R. R. Co.*, 127 U. S. 117, 123; *Pullman's Palace Car Co.* v. *Pennsylvania*, 141 U. S. 18, 22, 26, *et seq.; Cleveland &c., Ry. Co.* v. *Backus*, 154 U. S. 439, 445; *Western Union Telegraph Co.* v. *Taggart*, 163 U. S. 1, 14; *Adams Express Co.* v. *Ohio*, 165 U. S. 194, 221; *s. c.* 166 U. S. 185; *American Refrigerator Transit Co.* v. *Hall*, 174 U. S. 70, 75, *et seq.; Union Refrigerator Transit Co.* v. *Lynch*, 177 U. S. 149, 152; *Cudahy Packing Co.* v. *Minnesota*, 246 U. S. 450, 453.

The case presents no question of taxing a foreign corporation with respect to personal property that never has come within the borders of the State. According to the agreed state of facts and the petition of the Union Tank Line which is to be read with it, any and all cars of the company were liable to be used indiscriminately, as occasion required, in the transportation of oil within the State of Georgia, and there is nothing to show how many were so used during either of the taxing years in question. Fifty-seven cars simply represents the average number within the State at one and the same time within the year, and is not representative of the number of cars used in the State during the year. This court has declared that a State may lay hold of the average habitual use of movable railroad equipment as a basis of taxation (*Marye* v. *Baltimore & Ohio R. R. Co.*, 127 U. S. 117, 123); but there is nothing in the Constitution of the United States to confine the State to that particular method. It is but a method of approximation. Nor is the State obliged to ignore the special value that rolling stock has because of its organic relation to, and its customary use in connection with, the railroad tracks upon which it runs. Although the equipment be held in separate ownership, it may be regarded in fact as an appurtenance of the railroad and valued in that relation. It is admitted that the revenue derived by plaintiff in error from the use of its cars is in part paid by the railroad companies and proportioned to the mileage covered by the run of the cars.

The opinion of this court recognizes that plaintiff in error, because its tank cars are regularly and habitually used and employed in the State of Georgia, is taxable according to their fair value along with other property subject to the jurisdiction of the State, although they are devoted to interstate commerce; that while the valuation must be just it need not be limited to the mere value of the cars considered separately, but may include also the

special value attributable to their organic relation to the entire system; that fair appraisal, in a case like this, where the cars constitute part of a system operating in many States, is a matter of serious difficulty, but that absolute accuracy usually is impossible and therefore is not required by the Constitution; and it seems to be intimated that a valuation based upon the aggregate car mileage within the State during the taxable year would be permissible. But, even assuming that such a basis could be adopted without in effect regulating interstate commerce by varying the burden of taxation in direct proportion to the volume of such commerce, it still is obvious that a valuation according to aggregate car mileage would virtually ignore the particular value due to the relation of the cars to the rail system, would in effect be equivalent to a valuation according to average use, and would be open to the same objection, viz., that its ascertainment would lie wholly within the breast of the taxpayer. For, if the state authorities were required to keep a check either upon the average use or the aggregate mileage covered by the movements of rolling stock within the State, and to supplement this with observations in other States in order to arrive at the due proportion, the cost of administration easily might consume the tax.

It is because of difficulties such as these that so many of the States have resorted to track mileage—readily ascertained and little subject to change—as an equitable method of ascertaining the proportionate value taxable by a single State, out of the aggregate value of the movables of an equipment company that does business in several States.

This method was very clearly sustained by this court in *Pullman's Palace Car Co.* v. *Pennsylvania,* 141 U. S. 18, 26, a case decided in the year 1891, followed repeatedly, and never questioned in the least until now. The tax laws of the State of Georgia, and doubtless of many other

States, have been based upon that decision, and I regard it as most unfortunate that at this late date its authority should be overthrown.

The Pullman Company was a corporation of the State of Illinois, having its principal office in Chicago, and its business was to furnish sleeping coaches and parlor and dining cars to various railroad companies for use as a part of the equipment of passenger trains running in interstate commerce; the railroad companies collecting the usual passenger fares and the Pullman Company separate charges for seats and berths. The company was subjected by the State of Pennsylvania to a tax upon a part of its capital stock bearing the same proportion to the whole as the number of miles of railroad over which its cars were run in Pennsylvania bore to the whole number of miles in that and other States over which they were run. The Pullman Company objected to the taxation of any part of its capital stock by the State of Pennsylvania by reason of its running its cars through that State in the course of their employment in interstate transportation of passengers; and it is obvious that unless the tax was sustainable as being in substance and effect a tax upon property of the company no greater than that which the State had a right to impose it was invalid because amounting in its effect to a burden upon interstate commerce. It was from this point of view that the court tested and sustained the tax, as the following excerpts from the opinion will show. After declaring that the legislative power of every State extends to all property within its borders; that for purposes of taxation personal property may be separated from its owner and the owner taxed on account of it at the place where it is located, although he is not a citizen or resident of the State which imposes it; and that there is nothing in the Constitution or laws of the United States to prevent a State from taxing personal property employed in interstate or foreign commerce

like other personal property within its jurisdiction; the court, speaking by Mr. Justice Gray, proceeded to say (p. 25): "Much reliance is also placed by the plaintiff in error upon the cases in which this court has decided that citizens or corporations of one State cannot be taxed by another State for a license or privilege to carry on interstate or foreign commerce within its limits. But in each of those cases the tax was not upon the property employed in the business, but upon the right to carry on the business at all, and was therefore held to impose a direct burden upon the commerce itself.      The tax now in question is not a license tax or a privilege tax; it is not a tax on business or occupation; it is not a tax on, or because of, the transportation, or the right of transit, of persons or property through the State to other States or countries.      The tax on the capital of the corporation, on account of its property within the State, is, in substance and effect, a tax on that property. . . . The cars of this company within the State of Pennsylvania are employed in interstate commerce; but their being so employed does not exempt them from taxation by the State; and the State has not taxed them because of their being so employed, but because of their being within its territory and jurisdiction. The cars were continuously and permanently employed in going to and fro upon certain routes of travel.          [p. 26] The fact that, instead of stopping at the state boundary, they cross that boundary in going out and coming back, cannot affect the power of the State to levy a tax upon them.      . The route over which the cars travel extending beyond the limits of the State, particular cars may not remain within the State; but the company has at all times substantially the same number of cars within the State, and continuously and constantly uses there a portion of its property; and it is distinctly found, as matter of fact, that the company continuously, throughout the periods

for which these taxes were levied, carried on business in Pennsylvania, and had about one hundred cars within the State.

"*The mode which the State of Pennsylvania adopted, to ascertain the proportion of the company's property upon which it should be taxed in that State, was by taking as a basis of assessment such proportion of the capital stock of the company as the number of miles over which it ran cars within the State bore to the whole number of miles, in that and other States, over which its cars were run. This was a just and equitable method of assessment; and, if it were adopted by all the States through which these cars ran, the company would be assessed upon the whole value of its capital stock, and no more.* [Italics mine.] The validity of this mode of apportioning such a tax is sustained by several decisions of this court," etc.

It was upon this decision, among others, that the Supreme Court of Georgia relied as authority for its judgment. I cannot agree that any part of what I have quoted—least of all the italicized clause which relates to the apportionment of the tax according to track mileage—was *obiter dictum* or unnecessary for the decision. It was necessary—certainly so this court deemed it—that the disputed tax be vindicated as a property tax in order to relieve it from the criticism that it was an unwarranted interference with interstate commerce; and it could not be sustained as a property tax unless the method of apportionment was fair and equitable. The authority of the case cannot properly be overthrown by showing, even if it could be shown, that the court might have reached the same result upon some other ground than that which in truth it adopted as the basis of its decision. And it seems to me that a considered judgment of this court upon a constitutional question affecting the taxing powers of the States, long acted upon as a guide to state legislation upon this important and difficult matter, ought not to be

set aside without more cogent reasons than any that are here adduced. Certainly the fact that the established rule of taxation may operate with hardship or even with apparent injustice in a particular case is not sufficient to condemn it.

The decision referred to, *Pullman's Palace Car Co. v. Pennsylvania, supra,* has always been regarded as a leading case, and cited with uniform approval in repeated decisions of this court: not only upon the point that property employed in interstate commerce, and in the ordinary use of it situate sometimes within and sometimes without a State, is subject to state taxation without regard to the place of the owner's domicile; but also and especially in support of the proposition that the mileage basis of apportionment as between the different States may be resorted to in order to determine what tax each State shall lay upon rolling stock used upon interstate railroads, just as it often is resorted to in apportioning the tax upon a railroad as between different taxing districts in the same State.

The reasoning of the case upon the point now in controversy has never heretofore been regarded as *obiter dictum.* On the contrary, it was cited in support of the mileage basis of apportionment for the taxation of a railroad in *Pittsburgh, &c. Ry. Co. v. Backus,* 154 U. S. 421, 431; and, in *Adams Express Co. v. Ohio,* 165 U. S. 194, 221, to sustain a mileage apportionment with respect to interstate express companies, notwithstanding the absence of physical unity, *s. c.,* 166 U. S. 185. It was quoted from extensively in *American Refrigerator Transit Co. v. Hall,* 174 U. S. 70, 75–76, as authority for the apportionment of taxes upon rolling stock according to the track mileage within and without the State; the very part of the opinion now held to be *dictum* being included in the quotation. See also *Western Union Telegraph Co. v. Taggart,* 163 U. S. 1, 14, 21; *Union Refrigerator Transit Co. v. Lynch,* 177 U. S. 149, 152; *Union Refrigerator Transit Co. v. Kentucky,*

199 U. S. 194, 206; *Galveston, Harrisburg & San Antonio Ry. Co.* v. *Texas,* 210 U. S. 217, 225; *Pullman Co.* v. *Kansas,* 216 U. S. 56, 63–64; *Louisville & Nashville R. R. Co.* v. *Greene,* 244 U. S. 522, 548; *Cudahy Packing Co.* v. *Minnesota,* 246 U. S. 450, 453.    In *Fargo* v. *Hart,* 193 U. S. 490, 499, the court recognized the authority of *Pullman's Palace Car Co.* v. *Pennsylvania* as supporting the acknowledged doctrine of organic unity and the reasonableness and constitutionality of the mileage proportion, but found in the particular case an exception to the rule.

I can see nothing arbitrary or unreasonable in the general rule of mileage apportionment adopted by the State of Georgia, upon the authority of these repeated decisions of this court, for the taxation of railroad cars and other equipment habitually operated on lines extending within and without the State, and hence am convinced that the statute is not repugnant to the Federal Constitution. If, for any reason that does not appear, the rule operated unfairly in this particular case, and imposed an unjust and inequitable burden of taxation upon plaintiff in error, it was incumbent upon plaintiff in error to show this by calling for an arbitration upon the question of true value, as permitted by the Georgia statutes (Civil Code, §§ 1045–1046, 1050–1054), or by some appropriate proceeding for relief against the excessive part of the taxes.    Having failed to do this although properly notified, it cannot in justice be heard to say that the valuation of its property, made according to a statutory rule that in its general application is just and reasonable, is in the particular case so excessive as to amount to a deprivation of property without due process of law, or an undue burden upon interstate commerce.

MR. JUSTICE BRANDEIS and MR. JUSTICE CLARKE concur in this dissent.