## PORTO RICO MERCANTILE CO. v. GALLARDO, Treasurer of Porto Rico.

(Circuit Court of Appeals, First Circuit. July 7, 1925.)

No. 1828.

1. Taxation ⬤➡608(9)—Jurisdiction not declined, adequacy of remedy at law being at least doubtful.

The adequacy of remedy at law under Pub. Acts Porto Rico 1920, No. 17, providing for action to recover taxes paid under protest, but also providing (section 6) that action shall abate on failure of plaintiff to pay any other taxes subsequently levied, being at least doubtful, equity will not decline jurisdiction of suit to enjoin collection of illegal tax.

2. Taxation ⬤➡113—Porto Rico statute, taxing part of profits of American corporation on sale of Porto Rican products in New York, unworkable.

Acts Porto Rico 1921, No. 43, though disclosing intention to tax only such part of profits from sales of Porto Rican products in New York by a corporation organized in the United States and having its principal place of business in New York, as arise out of increment due to acts or transactions in Porto Rico, not defining a method of apportionment for ascertaining the part so arising, is unworkable, and tax assessed thereunder cannot be upheld.

Appeal from the District Court of the United States for the District Court of Porto Rico; Arthur F. Odlin, Judge.

Suit by the Porto Rico Mercantile Company against Juan G. Gallardo, Treasurer of Porto Rico. Decree for defendant, and complainant appeals. Reversed and remanded.

Nelson Gammans, of New York City, for appellant.

Archibald King, of Washington, D. C. (H. P. Coats, of San Juan, Porto Rico, on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is an appeal from a decree of the federal District Court for Porto Rico, dismissing, on its merits, a bill in equity brought by the Porto Rico Mercantile Company, a West Virginia corporation having its principal place of business in New York City, against Juan G. Gallardo, treasurer of Porto Rico, a citizen of the United States domiciled and residing in Porto Rico, to enjoin him from enforcing the collection of certain sums claimed to be due the people of Porto Rico from the plaintiff as unpaid income and excess profits taxes assessed against it for the years 1918, 1919, and 1921.

The bill alleges that the amount in controversy exceeds the sum of $3,000, exclusive of interest and costs; that the tax assessed for the year 1918 was $1,715.36, of which $1,443.71 was the normal and $271.60 the excess profits tax, that for 1919 was $1,978.-60, of which $1,722 was the normal and $256.60 the excess profits tax, and that for 1921 was $2,140.24, of which $1,573.20 was the normal and $567.04 the excess profits

tax; that the defendant threatened to seize and sell plaintiff's property to satisfy the tax; that the defendant required the plaintiff to make a return, and it did so under protest, and, feeling aggrieved by the tax assessed, applied to the treasurer and board of review and equalization for abatement as required by the statutes of Porto Rico; that the statutes under which the defendant purports to have acted are illegal and void, and the taxes were assessed without authority of law; that the plaintiff had no income, gross or net, arising in Porto Rico during the years 1918, 1919, and 1921, except $16,408.19 collected for storing molasses for the Sugar Products Company, less expenses connected with the service; and that plaintiff had no adequate remedy at law to enforce its right.

It appears from the evidence that the plaintiff, a West Virginia corporation, had its principal place of business in the city of New York and a branch office in Porto Rico in charge of a general manager; that it bought molasses from sugar centrals in Porto Rico and Santo Domingo by which it was manufactured; that the contracts of purchase for the greater part of the molasses were made by the plaintiff in New York City; that a small part of the molasses manufactured by centrals in Porto Rico was contracted for there; that it owns and maintains in Porto Rico tanks having a capacity of 1,000,000 gallons; that molasses obtained from centrals in Porto Rico is stored in these tanks and shipped on steamers to New York; that the greater part of the molasses purchased from centrals in Santo Domingo is shipped to Porto Rico and stored in the same tanks as that procured in Porto Rico, to await shipment to New York; that the balance of the molasses obtained in Santo Domingo is shipped directly to New York; that no molasses is manufactured or sold by the plaintiff in Porto Rico; that all sales of molasses by the plaintiff are made in New York; that the taxes assessed for the years in question are based upon and include the entire net income of the plaintiff from sales of molasses in New York, procured in Porto Rico and Santo Domingo.

It also appeared that the company received some income in 1918 and 1921 from the storage of molasses in its tanks in Porto Rico for another molasses company, and that in 1921 it received income from the sale and disposition of old tank cars that it had, which sums were taken into account in assessing the taxes for those years.

At the trial in the District Court the defendant disclaimed any right to include in the taxes for these years the net income derived from the sales of molasses procured at Santo Domingo, and offered evidence tending to show what he claimed to be the fair proportion of the net income attributable to the Santo Domingo molasses.

The court below held that the plaintiff had no adequate remedy at law to test the validity of the taxes as assessed under the laws of Porto Rico; that the government of Porto Rico could rightly tax the plaintiff on all of its net income received from molasses procured in Porto Rico and sold in New York; that, inasmuch as the molasses brought to Porto Rico from Santo Domingo was stored by the plaintiff in tanks containing Porto Rico molasses, and the income derived therefrom could not be distinguished, the plaintiff could not complain of the percentage system adopted by the officials of Treasury Department in determining the proportion of the income fairly attributable to the molasses procured from these two places, the apportionment being on the basis of the proportion of the amount paid for the Porto Rico molasses to the amount paid for all the molasses sold by the company.

If the District Court had jurisdiction in equity to pass upon the merits, it is evident that its order dismissing the bill was erroneous to the extent, at least, that it was shown that the taxes assessed for these years included the net income derived from sales in New York of molasses purchased in Santo Domingo, which the defendant concedes Porto Rico had no right to tax.

[1] In this state of the case the first question to be considered is whether the remedy at law was inadequate, so that the District Court had jurisdiction in equity.

Act No. 80, of 1919, which is the law under which the taxes of 1918 and 1919 were assessed, provides in sections 58 to 67, inclusive, that a taxpayer, who is aggrieved by the decision of the Treasurer in assessing a tax, may apply to the Treasurer for reconsideration, and, if he gets no satisfaction, apply to the Board of Review and Equalization; and, if he gets no satisfaction there, shall then within a limited time pay the tax imposed, under protest, and within ten days thereafter proceed against the Treasurer before the competent district court. And Act No. 43 of 1921, sections 45 to 47, inclusive, provides for similar action by an aggrieved taxpayer, the material difference being that he is given twenty days, instead of ten, after payment of the tax under protest in which to institute a complaint against the Treasur-

er in the competent district court to recover the same.

After the suit is in court it is evident that the procedure and defenses permitted are the same as those laid down in Act No. 17 of the Laws of Porto Rico of 1920, which is a general law covering actions brought in Porto Rico against the Treasurer to recover taxes. In section 6 of that Act, it is provided:

"That at any time that The People of Porto Rico shall show, through a certificate issued by the Treasurer, that the taxpayer complainant has not paid any other tax subsequently thereto, within the time fixed by law, he shall be deemed to have withdrawn his suit with costs and with the indemnity fixed in Section 4 of this Act taxed against him."

In West India Oil Co. v. Gallardo, Treasurer, 6 F.(2d) 523, decided by this court June 12, 1925, it was held that the right to bring suit under such conditions was not a plain and adequate remedy at law, and that jurisdiction in equity should be sustained.

In any view of the question it is at least doubtful whether the remedy at law is adequate, and in such case equity will not decline jurisdiction. Dawson v. Kentucky Distilleries Co., 255 U. S. 288, 296, 41 S. Ct. 272, 65 L. Ed. 638; Davis v. Wakelee, 156 U. S. 680, 688, 15 S. Ct. 555, 39 L. Ed. 578.

Act No. 80 of the Laws of 1919, under which the taxes for 1918 and 1919 were assessed, provides in section 2 that the term "domestic" when applied to a corporation may include a corporation "created or organized in the United States, provided that all or the greater part of its activities are developed in this Island or that all or a greater part of its business is done here;" and that the term " 'American', when applied to a corporation * * * means a corporation * * * created or organized in the United States and doing part of its business in Porto Rico, through agents or branches." Title 2, part 2, authorizes a tax on net income, which is defined as gross income less certain deductions (sections 5 and 24), and part 2, § 20, provides for the assessment and collection of a normal tax on the net income of corporations, and in subdivisons (a) and (b) thereof, that it shall be:

"(a) In the case of * * * American corporation * * * three (3) per centum on the amount of net income from any source.

(b) In case of a foreign corporation * * * six (6) per centum on the amount of net income derived from any source in Porto Rico."

Section 21 provides for an excess profits tax when the net income exceeds ten thousand dollars.

Section 25, in defining gross income, says:

"(b) In the case of an American * * * corporation, * * * the gross income includes only the gross income derived from sources within Porto Rico, etc."

By section 6 gross income includes:

"Gains, profits, benefits and incomes derived from * * * vocations, industries, commerce or businesses; or from sales or dealings in property, whether real, personal or mixed; or from * * * the transaction of any business carried on for gain or profit; or from gains or profits and income of any kind derived from any source whatever."

Act No. 43 of the Laws of 1921 defines taxable income in title 2, § 3, as follows:

"Section 3,—All income defined herein received or earned * * * by any corporation * * * organized * * * in the United States * * * and doing business in this Island, either directly or through agents or representatives, or who in any way derive income from sources located in this Island, or from the sale in Porto Rico or elsewhere of fruits, products or manufactures harvested, produced or manufactured in Porto Rico, shall be subject to the payment of the income tax hereby established."

In section 5 net income is defined as gross income less certain deductions, and in section 6 gross income is defined to be:

"Gains, profits, benefits and incomes derived from * * * vocations, industries, commerce or businesses; or from sales or dealings in property, whether real, personal or mixed; or from * * * any business carried on for gain or profit; or from gains or profits and income of any kind derived from any source whatever."

Section 9 provides:

"Section 9. In the case of * * * a corporation * * * organized or constituted in the United States, * * * the gross income includes only the gross income derived from sources within Porto Rico, or from the sale in the Island or elsewhere of the fruits, products or manufactures harvested, produced or manufactured in Porto Rico," etc.

Under the provisions of the foregoing laws the defendant claims that he is authorized and has the right to tax as income the net profits derived from sales in New York of molasses purchased in Porto Rico.

The plaintiff admits that it was subject to a tax on the net income derived from storage

charges for the use of its tanks by others. Its contention is that the provisions of the law of 1919 do not authorize the levy of a tax on the income derived from sales made in New York by a corporation domiciled in the United States and having its principal place of business in New York, and that, while the language of the act of 1921 may be broad enough to include such a tax, nevertheless to the extent the gains or profits were due to sales of its molasses outside of Porto Rico, the tax was unlawful and beyond the power of the Legislature of Porto Rico to authorize; that, if it was the intention of the Legislature by the law of 1921 to tax as income profits derived from sales in New York attributable to acts or transactions of the plaintiff in connection with the molasses that took place only in Porto Rico, the evidence shows that none of the acts or transactions of the plaintiff that took place there caused any increment in the value of the property to which any of the profits derived from sales in New York could be attributed; and that, if there was such evidence, the statutes under which the taxes for that year or any of the years were assessed provide no method by which the proportion or division of the profits attributable to such increment can be determined.

[2] It does not seem to us that the language of the act of 1919 is such as to call for a construction authorizing the assessment of a tax upon the profits derived from sales in New York of goods purchased in Porto Rico, and that its language may fairly be limited to profits derived from sales within Porto Rico.

The language of the act of 1921, however, is much broader; but we think it is such as to disclose that it was not the intention of the Legislature to tax income or profits from sales of Porto Rican products in New York by a corporation organized in the United States and having its principal place of business in New York, so far as such income arose out of increment due to acts or transactions occurring outside of Porto Rico, but only the profits arising out of increment due to acts or transactions within Porto Rico. A statute authorizing a tax on such profits càn be made workable only in case it defines

6 F.(2d)—34

a method of apportionment for ascertaining them. But the taxing statute in question makes no provision by which the proportion of income attributable to increment in Porto Rico due to acts in the handling of the property there can be ascertained, and the taxing authorities of Porto Rico assessed this tax on the entire net profits arising from sales in New York without attempting an apportionment. If it can be said to be probable that the storing of the molasses in Porto Rico increased its value there, it is impossible to determine the amount of profit attributable to that increase arising out of the sales in New York, and, in the absence of statutory provision defining how the share of income fairly and reasonably attributable to it may be determined for taxing purposes, we know of no way in which a law authorizing such a tax can be made workable and a tax assessed thereunder upheld. See Underwood Typewriter Co. v. Chamberlain, 254 U. S. 113, 120, 121, 41 S. Ct. 45, 65 L. Ed. 165; Wallace v. Hines, 253 U. S. 66, 69, 40 S. Ct. 435, 64 L. Ed. 782; Union Tank Line Co. v. Wright, 249 U. S. 275, 39 S. Ct. 276, 63 L. Ed. 602; Bowman v. Continental Oil Co., 256 U. S. 642, 41 S. Ct. 606, 65 L. Ed. 1139; Shaffer v. Carter, 252 U. S. 37, 53, 54, 40 S. Ct. 221, 64 L. Ed. 445; Gorham Mfg. Co. v. Travis (D. C.) 274 F. 975.

If the plaintiff were a corporation created and domiciled in Porto Rico, that government undoubtedly could tax the income derived from sales wherever made; but it was not a Porto Rican corporation domiciled there, and, to tax its profits arising from sales in New York, it is essential that some portion, at least, of the profits was due to acts or transactions of the plaintiff that took place in Porto Rico, which is ascertainable.

We are therefore of the opinion that the taxes assessed under the acts of 1919 and 1921 are unlawful and void, for the reason that they include income derived from sales of Porto Rican molasses in New York, as well as income from sales there of Santo Domingo molasses.

The decree of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion, with costs to the appellant.