THE PEOPLE OF THE STATE OF NEW YORK ex rel. SOCIETE ANONYME DES ANCIENS ETABLISSEMENTS, C. & E. CHAPAL FRERES & CIE, Relator, *v.* WALTER H. KNAPP and Others, Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, May 5, 1920.

**Tax — franchise tax on manufacturing and mercantile corporations — computation of tax — Tax Law, section 214, construed — including same items under different heads in determining monthly value of bills and accounts receivable.**

The State Tax Commission in computing, for the purpose of laying a franchise tax on manufacturing and mercantile corporations under chapter 726 of the Laws of 1917, the share of the net income which is derived from sources within the State, cannot, in determining the average monthly value of bills and accounts receivable under subdivision 2 of section 214 of the Tax Law, include under any one of the headings therein any items that have been listed under either of the other headings, for each class is intended to be exclusive.

---

CERTIORARI issued out of the Supreme Court and attested on the 27th day of August, 1919, directed to Walter H. Knapp and others, constituting the State Tax Commission of the State of New York, commanding them to certify and return to the office of the clerk of the county of Albany all and singular their proceedings had in assessing taxes against the relator for the fiscal year beginning November 1, 1917, under the provisions of article 9-A of the Tax Law relating to the franchise tax on manufacturing and mercantile corporations.

*George W. Olvany,* for the relator.

*Charles D. Newton, Attorney-General* [*C. T. Dawes* of counsel], for the respondents.

H. T. KELLOGG, J.:

The relator asserts that the State Tax Commission, in computing, for the purpose of laying a franchise tax under chapter 726 of the Laws of 1917, that share of the net income of relator which was derived from sources within the State, did not correctly apply the formula prescribed by section 214 of the Tax Law, as added by the act of 1917, for its ascertainment. Under that section the taxable net income of a corporation bears such proportion to its total net income as *the ratio which a sum,* obtained by the addition of amounts representing the monthly value of the real and personal property of the corporation within the State, the monthly value of its accounts receivable from State sources, and the average value of its corporate stocks allocated to the State, *bears to the sum* of the monthly values of all its tangible property wherever located, its accounts receivable however derived, and its corporate stocks allocated to whatever jurisdiction. The accounts receivable which are made a part of the third term of the proportion are thus described: " 2. The average monthly value of bills and accounts receivable for (a) tangible personal property sold from its stores or stocks within the State, (b) tangible personal property manufactured or shipped from within the State and (c) services performed within the State." The accounts for the fourth term are described in identical language, except that the property specified includes that sold, manufactured and shipped at places outside the State as well as at places within

the State, and the services specified include services wherever performed. In the case of this relator it so happens that a large portion of its accounts receivable are for goods " manufactured or shipped from within the State," and that these goods are likewise " sold from its stores or stocks within the State." Accordingly the State Tax Commission, in making the figures for the proportion, used the accounts receivable for these goods both under item " a " and under item " b " in each term of the second ratio, thus duplicating the accounts with a result which, owing to the large sales made by the relator within the State, has been greatly to its disadvantage. In other cases it might well happen that corporate receipts from sales outside the State would prove to be large, while receipts for sales within the State would be small, in which cases duplications such as made here, would be distinctly disadvantageous and unfair to the State. It cannot be reasoned, therefore, that these duplications were provided for intentionally in order to serve the self-interest of the State. Indeed, no reason or theory can be advanced which would make the method of computation employed other than a senseless and arbitrary scheme of calculating State-earned net income. Nor does it seem to me that a proper reading of the section requires or even permits the method. Its terms provide for calculating accounts and bills receivable derived from three sources, and as these sources are separately classified under the separate headings of " a," " b " and " c " the conclusion is unavoidable that each class is intended to be exclusive, and that what is reckoned under class " a " is not to be counted under class " b " or *vice versa*. It was not material whether the goods in question were counted under " a " or under " b," but if counted under one they should not have been counted under the other. Therefore, I think the determination of the State Tax Commission was erroneous.

The determination is reversed.

All concur.

Determination reversed, with fifty dollars costs and disbursements, and matter remitted to the Commission.