**GORHAM MFG. CO. v. TRAVIS, State Comptroller of New York, et al.**

(District Court, S. D. New York. August 11, 1921.)

No. E 16-232.

1. **Taxation ⬅608(9)—Review of a tax assessment conditional on deposit of the tax which is not recoverable held not to afford adequate remedy at law.**

   Where a state tax law requires the taxpayer to deposit the amount of his tax as a condition to a review of his assessment by the courts, and contains no provision for return of the deposit, which under the decision of the state courts cannot be recovered back, he is without adequate remedy at law and may maintain a suit in equity to restrain collection of a tax claimed to be illegal.

2. **Taxation ⬅13—State cannot tax foreign corporation on outside assets.**

   A state in taxing local revenue or local property of a foreign corporation may not include anything outside the state which cannot be said to contribute any part of its value to local assets.

3. **Constitutional law ⬅283—Taxation ⬅37—New York statute taxing income of foreign corporations held valid.**

   New York Tax Law, §§ 208 to 219l, providing that a foreign corporation for the privilege of doing business in the state shall pay a tax of 3 per cent. on its local income, to be determined by a consideration of the relative value of its entire property and accounts receivable and of its property and accounts receivable in the state, but which authorizes the corporation to present, and the assessing commission to consider, other relevant facts, *held* to provide a rule of allocation prima facie valid, and not unconstitutional as taking property without due process.

4. **Taxation ⬅608(2)—Collection of tax will not be enjoined for error in assessment which might have been corrected on revision.**

   A foreign corporation *held* not entitled to enjoin collection of a state tax on its income on the ground of an error in the assessment of the

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tax, and also that a part of the income taxed was derived from a source entirely outside the state and not taxable therein, where such fact did not appear from complainant's returns to the tax commission, and where it was authorized by the statute, on notice of the assessment to apply for a revision, when the error and the facts as to the sources of income could have been shown, but did not do so.

5. **Taxation ☜376 (1)—State in taxing income of corporation not required to deduct federal tax.**

A state, in taxing the income of a corporation, foreign or domestic, is not required to deduct from such income the tax paid therefrom to the United States.

In Equity. Suit by the Gorham Manufacturing Company against Eugene M. Travis, Comptroller, and Charles D. Newton, Attorney General of the State of New York. Decree for defendants.

The case comes up upon final hearing on a bill in equity by a foreign corporation to enjoin the Comptroller and Attorney General of New York from enforcing a franchise tax levied in 1918. The plaintiff is a silversmith, a corporation organized in Rhode Island, where all its manufacturing is done; but it has two shops and keeps a considerable store of goods, largely samples, in New York.

Title 9a of the New York Tax Law (Consol. Laws, c. 60) provides that such a corporation must pay a tax of 3 per cent. upon its local income for the privilege of doing business in the state. Section 209. This income is to be "presumably" (section 209) taken at the return made by the corporation on its federal income taxes, and is to be allocated in accordance with a formula set forth in section 214, following the facts stated by the foreign corporation in a return required by section 211. This formula divides the income in a proportion determined by the relative values of the sum of the corporation's property everywhere and of the sum in New York. Each sum is made up of the value of its real and personal property, of its accounts receivable for sales and "services," and of the shares in other corporations owned by it. The taxpayer is given the right to a hearing after notice of assessment (section 218), at which the assessors may reassess the tax "according to law and the facts," and to a review by certiorari in the Supreme Court (section 219). As a condition to certiorari, however, he must "deposit" with the comptroller the amount of the tax. A penalty of 10 per cent. and 1 per cent. a month is imposed upon defaults.

The plaintiff filed two returns in 1918, giving all the facts required, and claiming a deduction for the federal taxes it had paid. The Tax Commission of New York, the statutory assessors, assessed and levied the tax ignoring the claim for deduction, and gave the plaintiff notice on July 16, 1919. It asked for no hearing, under section 218, but filed this bill on October 7, 1919. The plaintiff now claims that the federal taxes paid should have been deducted; that the statute is unconstitutional; that its income returned to the United States for the year in question included its profits upon its munitions business, which was wholly local to Rhode Island, and was disconnected from its silverware business; and that the assessment violated the statute.

Robert C. Beatty, of New York City, for plaintiff.
C. T. Dawes, of Albany, N. Y., for defendants.

LEARNED HAND, District Judge (after stating the facts as above). [1] The first question is of jurisdiction in equity. I should have thought the provisions for revision by the Tax Commission and certiorari to the Supreme Court adequate remedies at law, Indiana Mfg. Co. v. Koehne, 188 U. S. 681, 23 Sup. Ct. 452, 47 L. Ed. 651;

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Boise, etc., Co. v. Boise, 213 U. S. 276, 29 Sup. Ct. 426, 63 L. Ed. 796; Dalton Machine Co. v. Virginia, 236 U. S. 699, 35 Sup. Ct. 480, 59 L. Ed. 797, except for one thing. Before applying for the writ, the taxpayer must "deposit" the tax with the State Comptroller (section 219), and there is no provision for getting it back. It is indeed a little strange that there should be doubt about this, but the only reported case, In re Waterman, 33 Misc. Rep. 569, 68 N. Y. Supp. 892, is flatly against any recovery. That was decided 20 years ago, and in spite of the suggestion there contained the Legislature has never seen fit to give power to a court to direct the Comptroller to pay back the money. The defendants say that the Appellate Divisions have frequently so decided, but they cite no cases. When a tax statute expressly directs the Comptroller to refund, it is true that the courts will compel him to do so, People ex rel. Millard v. Chapin, 104 N. Y. 100, 10 N. E. 141; People ex rel. Ostrander v. Chapin, 109 N. Y. 177, 16 N. E. 331, and such an act is constitutional, People ex rel. Evans v. Chapin, 101 N. Y. 682, but here there is no act. The matter at best rests in inference. The situation is therefore closely analogous to Dawson v. Kentucky, etc., Co., 255 U. S. —, 41 Sup. Ct. 272, 65 L. Ed. —, Supreme Court, February 28, 1921, where indeed there was a statute directing a refund, though the state authorities were ambiguous. That case I think rules, and shows that here an adequate remedy at law is not clear enough.

The second question is whether the statute is itself constitutional. It is now settled that a state, under the guise of granting to a foreign corporation the privilege of doing an intrastate business, may not as a condition impose upon it taxes which in fact though not in name are levied upon assets outside the state. That doctrine is generally assumed to take its origin from West. Un. Tel. Co. v. Kansas, 216 U. S. 1, 30 Sup. Ct. 190, 54 L. Ed. 355, which at one time was apparently thought to have been overruled in Baltic Mining Co. v. Mass., 231 U. S. 68, 34 Sup. Ct. 15, 58 L. Ed. 127, and Kansas City, etc., Co. v. Kansas, 240 U. S. 227, 36 Sup. Ct. 261, 60 L. Ed. 617. These cases were later distinguished in International Paper Co. v. Mass., 246 U. S. 135, 38 Sup. Ct. 292, 62 L. Ed. 624, Ann. Cas. 1918C, 617, and Cheney Bros. Co. v. Mass., 246 U. S. 147, 38 Sup. Ct. 295, 62 L. Ed. 632, because they imposed only license taxes with reasonable maxima; the calculation being merely a way of grading corporations within that limit. Kansas City, etc., R. R. v. Stiles, 242 U. S. 111, 37 Sup. Ct. 58, 61 L. Ed. 176, involved a domestic corporation, and while some of the language may seem to assimilate the two classes, it is clear that that distinction was thought controlling.

[2] The doctrine has been illustrated in various ways. In International Paper Co. v. Mass., supra, as in Western Union Tel. Co. v. Kansas, supra, the tax was levied upon the whole capital stock of the corporation without any limit, and this was bad. In Looney v. Crane Co., 245 U. S. 178, 38 Sup. Ct. 85, 62 L. Ed. 230, the corporate surplus was to be added to the stock. Again, in Union Tank Line Co. v. Wright, 249 U. S. 275, 39 Sup. Ct. 276, 63 L. Ed. 602, an allocation of tank cars was based only on the mileage of the roads on which they

traveled, and was held bad, as in Wallace v. Hines, 253 U. S. 66, 40 Sup. Ct. 435, 64 L. Ed. 782, where the local value of a railroad in North Dakota having valuable terminals outside the state was allocated on the basis of its track mileage within that state. The allocation was in each case held to include assets outside the state. In general it may be said that a state in taxing local revenue or local property may not include anything outside the state, which cannot be said to contribute any part of its value to local assets. Meyer v. Wells, Fargo & Co., 223 U. S. 298, 32 Sup. Ct. 218, 56 L. Ed. 445; Fargo v. Hart, 193 U. S. 490, 24 Sup. Ct. 498, 48 L. Ed. 761. Galveston, H., etc., Ry. v. Texas, 210 U. S. 217, 28 Sup. Ct. 638, 52 L. Ed. 1031, is to be understood as depending upon this rule. The only reason for regarding property without the state at all is in order to find the true value of the local assets, not as junk but as parts of an integral industrial unit. That is, I take it, the final test, as applicable since Western Union Tel. Co. v. Kansas, 216 U. S. 1, 30 Sup. Ct. 190, 54 L. Ed. 355, to franchise taxes as to taxes directly on revenue or on principal.

[3] With all deference when applied to corporations having business in several states, any effort at allocation must be more or less arbitrary and fictitious, as is indeed shown by the record at bar. The truth is that in a business which is a unity, it is impossible to break up the parts and satisfactorily to assign to any piece a corresponding part of the income. Take as an instance the record here. Much of the personal property of the plaintiff in New York consists of sample pieces of silverware kept for display, by which goods elsewhere are sold, some of which never come into New York at all. A foreign customer may see such samples and order from them, but the goods may be shipped from Rhode Island to Pennsylvania or Connecticut. Yet it would be an obvious error not to assign any part of the resulting income to the New York samples. No one could possibly say whether the sale would have been made without them. The case in this aspect presents the not wholly unfamiliar difficulty of trying to apportion quantitatively the effect of a number of factors each of which is an absolute condition to the result. In such a case there is no rational solution which will bear scrutiny, and one must proceed by a more or less rough division not too shocking to preconceived assumptions. Underwood Typewriter Co. v. Chamberlain, 254 U. S. 113, 41 Sup. Ct. 45, 65 L. Ed. ——, Supreme Court, November 15, 1920, presented for example the very converse of the case at bar. There the taxpayer manufactured its goods in Connecticut, the taxing state, but sold few of them there. It argued that its Connecticut income should be measured by its Connecticut sales. But the court said that manufacture was an essential step in making profits and that part of the profits were "made" where the goods were produced. Therefore it sustained a statute which apportioned income by tangible property. The plaintiff here argues that the sales in New York should not be taken as all due to New York assets, because the manufacture took place in Rhode Island. That is quite true, but it is also true, as I have just said, that it is impossible to say

how far sales made elsewhere are created by the shops and stock in New York. Any rule must therefore be largely conventional.

In the case of railroads an allocation of cars and other property according to mileage was supported in State R. R. Tax Cases, 92 U. S. 575, 23 L. Ed. 663, and Pullman's Car Co. v. Pa., 141 U. S. 18, 11 Sup. Ct. 876, 35 L. Ed. 613, and in the case of a telegraph company in Western Union Tel. Co. v. Attorney General, 125 U. S. 530, 8 Sup. Ct. 961, 31 L. Ed. 790, and in Western Union Tel. Co. v. Taggart, 163 U. S. 1, 16 Sup. Ct. 1054, 41 L. Ed. 49. I do not understand that Union Tank Line Co. v. Wright, supra, or Wallace v. Hines, supra, overrule those cases so far as the prima facie rule is concerned. They do hold that when the rule is shown in a given instance to result in the taxation of foreign assets, it is invalid. Prima facie it remains a sound rule, as I understand it. In the case of manufacturing companies I know of no similar statute which the Supreme Court has passed on except that in Underwood Typewriter Co. v. Chamberlain, supra. In that case the allocation was made merely upon the proportion of tangibles. While it was not in form an excise, that point was disregarded, and the decision there seems to me to support the defendants here. The income of such a company is created by the use of its economic capital in the hands of those who make and sell its goods. The statute at bar allocates that income upon the basis of capital, real and personal, and of accounts receivable. These last are divided into sales and pay for "services." Sales are some measure of the work of production and marketing. Of course, they are not a certain measure, but nothing is. If all the business of the corporation is done upon the same term of credit, accounts receivable on sales furnish a tolerable measure by which to apportion such work. Capital, the other element, is included directly. If either were omitted, an argument might be made against the propriety of the formula, for each is regarded as a factor in production.

This is indeed a rough rule and may in application work unevenly, but every rule must. Even if each transaction were analyzed, the result would be, as one of the plaintiff's own witnesses put it, "a series of arbitrary decisions which would not be based on the facts at all." The consequence is not, as the plaintiff's argument would have it, to deprive the state of all power to tax, but to require no more, at least as a presumptive rule, than an honest allocation which shall avoid gross inequities. Perhaps the taxpayer must have the right to show that parts of the foreign assets are not functionally connected with the local business; perhaps he must have the further right to show that though functionally a part, as were the terminals in Wallace v. Hines, supra, the formula works with gross inequity. I think he has both these rights. Section 211, subd. 7, gives the Commission the power to call upon the taxpayer to return "such other facts" as it thinks relevant. If the formula were absolute they would be irrelevant. Section 218 gives the Commission on revision, if shown that there have been "included taxes or other charges which could not have been lawfully demanded," power to reassess the tax "according to law and the facts." These provisions in my judgment give the assessors a latitude outside

the formula which would cover its inequitable application. Until it conclusively appears that in its administration they have declined so to interpret their powers, I see no reason for holding otherwise.

It is not clear that the whole statute was under attack in People ex rel. Alpha, etc., Co. v. Knapp, 230 N. Y. 48, 129 N. E. 202, but the effect of the decision was certainly to sustain the act after excising the two objectionable features. Perhaps the propriety of the general methods of allocation was thought to be too obvious for comment. In any event, the case stands for a latitudinarian interpretation of the statute as a whole, and I shall assume that it only lays down a formula which admits of adaptation in those cases in which its literal application would give a clear overvaluation to the local assets, and where the necessary conclusion must be that foreign income is taxed. A statute must be saved by friendly interpretation so long as it can.

[4] The statute being valid on its face, the next question is whether in its application the plaintiff has suffered a constitutional wrong. It filed two returns under the statute, one on July 17, 1918, and one on December 14, 1917; but the proof shows that the Commission followed neither. Their action is based upon a statement contained in the record, but I cannot find any evidence of how they reached it. In any event, the plaintiff made no application for a revision under section 218. Notice of the "audit," or assessment under section 219a, was sent to the plaintiff on July 16, 1919, and the plaintiff began this suit on October 7 of that year. Now it urges that its munitions business, which was conducted entirely outside the state and showed a much larger profit, should not have been treated as part of its silverware business. I should be disposed to think that such a business fell within the rule of Fargo v. Hart, supra, Meyer v. Wells, Fargo & Co., supra, and People ex rel. Alpha, etc., Co. v. Knapp, supra, and surely it was within that of Union Tank Line v. Wright, supra, and Wallace v. Hines, supra. But the plaintiff brought none of this to the attention of the Tax Commission. All they had to go upon was the plaintiff's returns and such other undisclosed figures as resulted in their assessment. Prima facie they were justified in assuming that the income returned was upon a unitary business, and it was the plaintiff's duty either by a rider on its returns, or, by applying for a revision under section 218, to bring the facts to the attention of the Commission and to demand a separation of the two businesses. If this had been denied them, then perhaps the Commission's action might have been unconstitutional and open to collateral attack under the doctrine first announced in Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220. Yet even then the Commission's "audit" would have been in effect an assessment, and a bill in equity will not ordinarily lie to enjoin a tax levied under an assessment merely for error of assessors. State Railroad Tax Cases, 92 U. S. 575, 613–615, 23 L. Ed. 663; Chic., etc., R. R. v. Babcock, 204 U. S. 585, 27 Sup. Ct. 326, 51 L. Ed. 636. I do not mean that there was in fact an error, because I cannot see how the Commission could have divided out the munitions business of which they knew

nothing, but, if they had known of and disregarded it, the plaintiff was bound to demand a revision. The means given it (section 218) were constitutionally sufficient in the first instance, Hagar v. Reclamation Dist., 111 U. S. 701, 710, 711, 4 Sup. Ct. 663, 28 L. Ed. 569; Gallup v. Schmidt, 183 U. S. 300, 307, 22 Sup. Ct. 162, 46 L. Ed. 207; Wells, Fargo & Co. v. Nevada, 248 U. S. 165, 168, 39 Sup. Ct. 62, 63 L. Ed. 190, and the assessors might well have acceded to their position.

The tax as actually assessed contained a duplication of the accounts receivable. The assessors followed an interpretation of the law condemned in People ex rel. Soc. An. v. Knapp, 191 App. Div. 701, 182 N. Y. Supp. 448, affirmed on opinion below, 230 N. Y. 557, 130 N. E. 892. This section had already been changed by chapter 417 of the Laws of 1918, but for some reason the Tax Commission followed the old statute, perhaps because that chapter, unlike chapter 276 of the Laws of 1918, did not operate retroactively. The difference is less than $300, but of course that should not determine my decision. The blunder was, at most, only an error of the assessors in applying the law, and as in the case of the munitions business, the plaintiff was bound to ask for a revision. Moreover, in this case, whatever may be said about the other, there could be no possible ground I think for a bill in equity. By no construction could it be supposed that such an error in estimating the tax was an unconstitutional taking of property, as might be argued in the case of the munitions business. While, therefore, on the facts as stated, the tax both in respect of this and of the inclusion of the munitions business was erroneous, the plaintiff did not choose to avail itself of that process of law which was accorded to it, and therefore was not the victim of any unconstitutional action by the Commission.

[5] There remains only the question of the exclusion of the federal taxes paid by the plaintiff during the year in question. As the Court of Appeals has decided against the plaintiff on this question, People ex rel. Barcalo v. Knapp, 227 N. Y. 64, 124 N. E. 107, the contention resolves itself into one of constitutionality. It is alleged that this effects a discrimination against foreign corporations and in favor of domestic. It is quite true that the foreign corporation has less income because of the federal tax, but so has a domestic. If the taxes were in like proportion for all incomes, the exclusion of federal taxes would accomplish nothing except that the taxed incomes of each class of corporations would be higher than on the plaintiff's theory they should be. There would be no discrimination in that. Federal taxes do not in fact bear in equal proportion upon all incomes, but they are as apt to bear heavily on domestic as on foreign corporations, and there is no warrant for saying that foreign corporations are subject to discrimination.

The United States and the State of New York in such matters are independent powers, neither of which need yield to the other. Each taxes, and so seizes, a part of the same income; but there is no more reason why the state must recognize the deductions of the United States before calculating its percentages than that the United States must recognize those of the state, which it surely need not, if it choose to ignore

them. All that can be asked is that the state recognize all deductions in assessing foreign corporations that it does in assessing domestic. Travis v. Yale & Towne Mfg. Co., 252 U. S. 60, 40 Sup. Ct. 228, 64 L. Ed. 460. As it recognizes neither, all are treated equally, though it be with equal severity.

I conclude, therefore, that the statute lays down a valid prima facie rule for ascertaining the local income of a foreign corporation, and that it may tax it; that in so far as the application of that rule in the case at bar may have been unequal, because some of the assets outside the state did not contribute any value to the local assets, and in so far as the assessors misapplied the statute in laying the assessment, the plaintiff had its opportunity to complain and procure a reassessment, and that having failed to do so, no bill in equity lies to reassess the tax; and that the state need not deduct the United States taxes in estimating the taxable income of a foreign corporation.

It follows that the bill must be dismissed, with costs.

⚖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes