182 So.2d 292 (1966)
J.D. BOOTH, Appellant,
v.
MARY CARTER PAINT COMPANY, a Delaware Corporation, Wallace Tompkins and Crofford D. Hancock, Appellees.
No. 5704.
District Court of Appeal of Florida. Second District.
January 21, 1966.
*293 Howard C. Hadden, of Hawes & Hadden, St. Petersburg, for appellant.
E.R. Mills, Jr., Ocala, for appellees.
PIERCE, Judge.
Appellant J.D. Booth (hereinafter called plaintiff) filed suit in the lower Court seeking damages for the death of his wife as a result of a motor vehicle accident. Named as defendants were Mary Carter Paint Company, a corporation, Wallace Tompkins, Crofford D. Hancock, B.C. Willoughby and Harry Lee Sutton. Involved in the fatal accident were two trailer-tractor trucks belonging to Mary Carter and one Chevrolet truck owned by Willoughby. The Mary Carter vehicles were being operated by Hancock and Tompkins respectively, while the Willoughby vehicle was being operated by Sutton. The three drivers were so operating their respective vehicles as to render the truck owners responsible for the acts of their respective drivers. The accident happened at about 2:30 o'clock in the morning of May 8, 1964 on State Road 491, a two lane paved highway in Citrus County. Plaintiff's wife was *294 driving alone in her Volkswagen, engaged in her duties as a newspaper route carrier, and crashed into the rear end of the Willoughby truck. All three trucks were parked on the pavement of the highway at the time, and took up practically the entire width of the paved road.
The Complaint filed by plaintiff was grounded upon the theory of concurrent negligence on the part of all three truck drivers and the resultant liability of the truck owners. Owner Willoughby and his driver Sutton answered, making general denial of liability and asserting affirmatively that the deceased was contributorily negligent in the operation of her Volkswagen, which negligence was a proximate cause of the accident. Mary Carter and its two drivers filed similar defenses.
Numerous depositions of various witnesses were then taken by the several parties to the suit, pursuant to which Mary Carter and its employees filed Motion for Summary Judgment in their favor, contending that no genuine issue of fact existed between plaintiff and said defendants on the question of liability. The Court granted said motion and summarily dismissed the suit against said three defendants, leaving Willoughby and his driver remaining as sole defendants. Plaintiff has appealed the order granting summary judgment.
So the issue presented for determination by this Court is: from the facts and circumstances shown to exist by the pleadings and depositions,[1] together with the reasonable inferences therefrom, was the lower Court warranted in holding as a matter of law that no liability existed, or could exist, as to the three defendants involved to warrant submission of the case, as to them, to a jury? We think the Circuit Judge was in error in so holding.
Resolution of this question necessarily depends initially upon determination of what facts were before the lower Court. Such facts may be collated as follows:
The tragedy had its inception in a college fraternity initiation prank. A part of the "rites" consisted of the "brothers" taking two "neophytes" out on a lonely State road and putting them out on the highway blindfolded without them knowing where they were, on foot and with no company except the screech owls and the heavens above. This is what happened on that night at the time and place aforesaid. The "brothers" had proceeded back to the sanctum of their University lodgings, leaving the two initiates wandering around at night, alone and helpless on the public highway. Into this eerie situation came two heavily loaded motor vehicle rigs, both owned by defendant Mary Carter and being then and there operated on Mary Carter business. The trucks were being driven in a southerly direction on said highway, the forward truck being driven by employee Hancock and the one to his rear being driven by employee Tompkins. Hancock was driving a 1963 GMC cab or tractor pulling a 36 foot Miller trailer which was eight feet wide and carrying a cargo load of 15 tons of pigment. Tompkins, to the rear of Hancock about a quarter of a mile, was driving a 1962 model GMC box sleeper cab, pulling a 36 foot Miller trailer, similarly loaded with pigment. Both trucks with their respective cargo were proceeding to the same destination in Hillsborough County.
When the lead truck, Hancock driving, approached the two boys on the highway, Hancock at first thought there had been an accident and stopped his vehicle. He described it as rolling country and said that he had just turned a curve on the highway and was then going slightly downhill when he stopped. The road at that point was 18 to 20 feet wide. His vehicle, which was 8 feet wide, stopped with all wheels on the paved portion of the highway. When he stopped he rolled his cab window up and locked the door. Tompkins, the other Mary *295 Carter driver, in the meantime had come up behind and parked about 40 feet behind Hancock on the same side of the highway, also with all wheels on the pavement. Just ahead of Hancock was a hill, downward in the direction Hancock would have been going but upwards for anyone approaching Hancock. When he first came up on the boys, Hancock had his bright lights on, then dimmed them for the boys, then put them on bright again. He also turned his blinker lights on, which he explained by saying, "You pull a switch and all four of them, two front ones and two rear ones, blink at the same time * * * an emergency precaution." After he pulled up, Hancock quickly saw nothing to indicate there had been an accident and that neither of the boys appeared to be hurt, however, he continued to leave his headlights and his blinker lights on, as indicated.
After he had had conversation with one of the boys enough to ascertain what had happened, he noticed a truck coming up over the hill toward him. This was the Willoughby truck, driven by Sutton. Describing the incline, Hancock said "It's a long hill. It was a pretty good ways. I'd be scared to say," estimating it was probably a quarter of a mile in length. Just as he saw the headlights of the Willoughby truck coming over the top of the incline Hancock again dimmed his own lights and Sutton dimmed his likewise. Sutton thereupon pulled his vehicle alongside of Hancock's in such position that his cab window was immediately opposite Hancock's cab window and they could easily talk to each other. Willoughby's truck was "very large," fully loaded with lime rock, carrying a gross overall weight of at least 36 tons. All three vehicles were then parked on the paved portion of the highway, the two Mary Carter vehicles in single file headed in a southerly direction and the Willoughby truck headed north. Hancock and Sutton then had conversation, with Hancock acquainting Sutton with the situation.
At just about this time plaintiff's wife, driving alone in her Volkswagen car covering her newspaper route, came up in a northerly direction and crashed into the rear of the Willoughby truck, being killed instantly. At the time of the impact Hancock had not seen the Volkswagen, had not heard the approach of the Volkswagen, was not conscious of the approaching headlights on the Volkswagen, and was looking not at the road ahead but across in the direction of Sutton with whom he was talking. The first thing he saw was the "shower of glass up under the rear end of" the Willoughby truck. He did not hear any brakes sound nor any crash of metal. The windshield of the Volkswagen was demolished and the glass crashed down on the pavement but Hancock did not hear it hit the pavement, only "seen it." It was a reasonably dark night. Hancock was especially familiar with that particular area, having driven over that highway "twice a week for the last year or two anyway," and having hunted deer in that area. The road had a 200-foot right-of-way fenced in on either side of the road. The shoulder of the road on Hancock's side was grassy and sandy and approximately 8 feet wide, the same as his vehicle. After the impact, Hancock said the Volkswagen "shot back like a bullet" a distance of from 42 to 52 feet. Its headlights were still on when it came to rest. The Willoughby truck was unmoved and showed no signs of being struck. At the time of impact the Willoughby truck and the Hancock truck were preempting the paved portion of the highway or, as Hancock described it, "the two travelling lanes of the highway were taken up." Each of the Mary Carter trucks had flares and flashlights as a part of their equipment, but they were not used.
Tompkins, the driver of the second Mary Carter truck, had driven that particular road numerous times before and was familiar with it. While he was parked just behind Hancock's truck, his attention was momentarily distracted by a bad waterpump *296 on his truck. He looked at his heat indicator, then stuck his head out of his window, which is when he first noticed the headlights on the Volkswagen approaching the Willoughby truck from about 200 to 250 yards away. He could not hear the Volkswagen but estimated it was travelling around 40 to 45 miles per hour. Although he noticed the Volkswagen approaching he did not use his lights nor sound his horn as a warning. The Volkswagen seemed to swerve slightly to the right about thirty or forty feet before the impact with the Willoughby truck.
The foregoing constitute the essential facts established by the pleadings and depositions before the trial Judge.[2] The question before this Court is a close one but our disposition is clearly indicated by the record before us.
Certain well-established principles have been heretofore laid down by the Florida Appellate Courts governing consideration of Motions for Summary Judgment. Summary judgment is not a substitute for a trial. Alepgo Corp. v. Pozin, Fla.App. 1959, 114 So.2d 645. The purpose of a summary judgment hearing is not to resolve conflicting issues of fact but for a Court to ascertain and determine whether or not genuine issues of material facts exist and once such facts are shown to exist the motion should be denied. Messina v. Baldi, Fla.App. 1960, 120 So.2d 819; Shulman v. Miller, Fla.App. 1958, 107 So.2d 274.
Judge Kanner, speaking for this Court in Humphrys v. Jarrell, Fla.App. 1958, 104 So.2d 404, text 408, expressed it very eloquently in the following language:
"Summary judgment or decree is permissible only where the pleadings, depositions, or admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the movant is entitled to judgment or decree as a matter of law. The burden of proof is upon the party moving for summary judgment or decree to show lack of a genuine issue of material fact, and all doubts as to the existence of such fact must be resolved against the movant. On failure to show such lack of a genuine issue of material fact, or if a genuine issue of material fact otherwise appears, movant's motion must be denied. It follows that summary proceedings may be used only as a vehicle for establishing whether there is a genuine issue of material fact to be determined, and the trial court may not try or determine factual issues in such proceedings. If it is disclosed that there does exist a genuine issue of material fact, the judgment or decree may not be entered. If salient facts are established beyond dispute, question then arises whether one party or the other party should be awarded judgment or decree as a matter of law, and that question is to be decided by the trial judge using the established facts as a premise. Caution and discernment should go hand in hand where the power to enter summary judgment or decree is exercised, for such a power wields a dangerous potential which could have the effect of trespass against fundamental and traditional processes for determining the rights of litigants. See Shaffran v. Holness, Fla. 1957, 93 So.2d 94; Jones v. Stoutenburgh, Fla. 1956, 91 So.2d 299; Manning v. Clark, Fla. 1954, 71 So.2d 508; and Johnson v. Studstill, Fla. 1954, 71 So.2d 251." (Emphasis ours.)
And Justice Thornal, for the Supreme Court, laid down the basic ground rules in evaluating the evidence upon such motions in Jones v. Stoutenburgh, Fla. 1956, 91 So.2d 299, text 302, as follows:
"On a motion for a summary judgment the trial court is not authorized to *297 try or weigh facts. Yost v. Miami Transit Co., Fla. 1953, 66 So.2d 214. The objective to be accomplished is to determine the existence of a material factual issue. If such an issue is present, the motion should be denied. Johnson v. Studstill, Fla. 1954, 71 So.2d 251. If there is any doubt as to the existence or non-existence of a genuine issue of a material fact, then such doubt must be resolved against the movant. Manning v. Clark, Fla. 1954, 71 So.2d 508. This is so because the burden is upon the movant to establish the proposition that no genuine issue on a material fact exists.
"While summary judgment procedure is to be commended as a procedural facility for bringing on early termination to cases that lack genuine and material factual issues, nevertheless, the power to enter a judgment summarily should be exercised with a degree of circumspection in view of its potentialities for encroaching upon our traditional processes for determining the rights of parties to a cause."
Also, in cases where there is no conflict in the evidence, but where inferences are reasonably deducible therefrom casting doubt upon the issue of negligence, such motions should be denied. 30 Fla.Juris. 339, citing Mason v. Remick, Fla.App. 1959, 107 So.2d 38:
"Even where the evidence is not in dispute, when conflicting reasonable inferences may be drawn from the admitted facts, questions of negligence and negligent causation are peculiarly questions of fact that should be permitted to go to the jury."
It is axiomatic that the entire evidence submitted upon such motion must be considered and evaluated most strongly against the moving party. Inter-County Tel. & Tel. Co. v. Purvis, Fla.App. 1964, 163 So.2d 38; Clark v. City of Atlantic Beach, Fla.App. 1960, 124 So.2d 305.
Florida is committed to the "slightest doubt" rule. Crovella v. Cochrane, Fla. App. 1958, 102 So.2d 307; Jacobi v. Claude Nolan, Inc., Fla.App. 1960, 122 So.2d 783; Harrison v. McCourtney, Fla.App. 1962, 148 So.2d 53; Skaf's Jewelers, Inc. v. Antwerp Import Corp., Fla.App. 1963, 150 So.2d 260.[3]
Summary judgment should be sparingly utilized in negligence cases. Farrey v. Bettendorf, Fla. 1957, 96 So.2d 889; Saunders v. Kaplan, Fla.App. 1958, 101 So.2d 181; Buck v. Hardy, Fla.App. 1958, 106 So.2d 428; Shapiro v. F.W. Woolworth, *298 Fla.App. 1960, 120 So.2d 806; Jung Gwong v. Tampa Hotels, Inc., Fla.App. 1961, 132 So.2d 232; Beikirch v. City of Jacksonville Beach, Fla.App. 1964, 159 So.2d 898; Grall v. Risden, Fla.App. 1964, 167 So.2d 610.[4]
As stated by the U.S. Court of Appeals, Fifth Circuit, in a case arising in Florida and hence governed by Florida law, Stace v. Watson, C.A.Fla. 1963, 316 F.2d 715:
"Issues of negligence are ordinarily not susceptible of summary adjudication and may be granted only where the facts are not only undisputed but are such that all reasonable men in exercise of fair and impartial judgment must draw inference and conclusion therefrom of non-negligence." (Emphasis supplied.)
As hereinbefore stated, the complaint in the instant case was grounded upon the theory of concurrent or joint negligence as between the driver of the Willoughby truck and one or both of the drivers of the Mary Carter trucks. The rule governing such concurrent negligence is aptly stated in 7 Am.Juris.2d 912, as follows:
"The operator of a motor vehicle so negligently operated as to place others in a position where they are injured by another motor vehicle operated by a third person may be held liable therefor where it can be said that such negligence was the proximate cause of such injuries. The responsibility of a motorist for injuries immediately inflicted by another motorist is not avoided merely by proof that the other motorist was also negligent; if both are negligent, and their concurring negligence is the proximate cause of the injuries, they are jointly and severally liable.

"The responsibility for injuries may be imposed upon the operator of a motor vehicle which is operated in such a negligent manner as to cause the injured person or his property to * * * collide with another vehicle, * * *. (Emphasis supplied.)"
*299 Florida cases applying the foregoing doctrine are Jackson v. Florida Weathermakers, Inc., Fla. 1951, 55 So.2d 575; Hernandez v. Pensacola Coach Corp., Fla. 1940, 141 Fla. 441, 193 So. 555. Also see Blashfield's Cyclopedia Automobile Law & Practice, Vol. 4, Sec. 2573, pages 374-376.
In the instant case the facts before the lower Court were sufficient upon their face to negative any finding of non-negligence on the part of Mary Carter's drivers. This is so, either upon the theory of a concurring negligence with Willoughby's driver (in the light of the foregoing authorities on concurrent negligence) or upon the theory of the individual negligence of the Mary Carter driver, or either of them, irrespective of the concurring factor.
On the question of concurrent negligence, the evidence would warrant a reasonable inference that the acts of the Mary Carter drivers, particularly Hancock, was the inducing factor which caused the Willoughby truck to stop on the highway in the first place, thereby creating at once a most hazardous traffic danger. It would be idle speculation to assume that the Willoughby truck would have stopped if Hancock had not, in effect, been "flagging" the Willoughby truck down by rotating his headlights from bright to dim to bright, turning on his four-cornered blinker lights, etc. The evidence is consistent only with the fact that the Mary Carter driver was trying to get the Willoughby driver to stop.
It may well be that Hancock had good intentions in his actions, namely, to help the boys stranded on the highway. But negligence and intention have no necessary connection. Negligence is not dependent upon bad intention, nor is it necessarily negatived by good intention. When the legal rights of others are involved, the question of negligence vel non must stand on the facts themselves, uninfluenced by intention. And in applying such rule here, the negligence, if any, of the Willoughby driver would be imputed to the Mary Carter driver; certainly it cannot be said that, as a matter of law, the acts of the Mary Carter driver had no legal connection with the acts of the Willoughby driver when the Mary Carter driver was the moving force in stopping the Willoughby truck on the highway and detaining him there until the fatal accident occurred.
On the question of individual negligence of the Mary Carter drivers, independently of the conduct of the Willoughby driver, the Court is confronted immediately with the proposition that both Mary Carter drivers were violating Florida law in stopping their vehicle on the paved portion of the narrow two-lane highway, especially at that time of night, at least for anything less than an actual existing and discernible emergency.
F.S. Section 317.442(1) and (2), F.S.A. reads as follows:
"317.442 Stopping, standing or parking outside of municipalities
"(1) Upon any highway outside of a municipality, no person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practical to stop, park, or so leave such vehicle off such part of said highway; but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle shall be available from a distance of two hundred feet in each direction upon such highway.
"(2) This section shall not apply to the driver or owner of any vehicle which is disabled, while on the paved or main traveled portion of a highway, in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position, or to passenger-carrying buses temporarily parked while loading or discharging passengers, where highway conditions render such parking off the paved portion of the highway hazardous or impractical."
*300 It is settled law in Florida that the violation of a traffic law is prima facie evidence of negligence. Michalski v. Peaslee, Fla.App. 1965, 174 So.2d 427. Of course, this does not mean that such violation is conclusive or that it is not rebuttable, or that it cannot be overcome by proof of other circumstances. But it would operate in the ordinary case to prevent entry of summary judgment in favor of such violators and at least to warrant submission of all the facts in evidence to a jury.[5]
The general law on the subject of stopping a motor vehicle on the highway, irrespective of traffic law violation, is stated in 18 Am.Juris.2d 375, as follows:
"When it is necessary for a motorist to stop his vehicle along the road, he has the duty, where it is reasonably possible, to drive until he finds a space to stop off the traveled portion of the road. Whether it is reasonably possible to do this is ordinarily a question for the jury. If there is sufficient space available for stopping off the traveled portion of the highway or there is a driveway or side road near, and the stopping motorist is able to move his vehicle into that area, he may be charged with negligence in failing to do so.
"The width or condition of the shoulder is a factor in determining the negligence of a motorist in stopping his vehicle on the traveled portion of a highway where he otherwise has a valid excuse for stopping. If, for instance, a heavily loaded truck is forced to stop because of a flat tire, the fact that the shoulder of the road was soft and the truck might bog down so that it could not be jacked up for the tire repair are circumstances to be considered in determining whether the driver of the truck was negligent in failing to remove it from the traveled portion of the highway onto the shoulder of the road."
In Townsend Sash Door & Lumber Co. v. Silas, Fla. 1955, 82 So.2d 158, the Supreme Court dealt with a death case arising from negligence in leaving a heavy motor vehicle parked on the highway. The facts in that case are, in some respects, not as aggravating as could be found in the instant case. In Townsend, the vehicle was a tractor-trailer, the same as here. But the driver did not stop voluntarily, he had given out of gas; also, the right front and right rear wheels were off the paved surface. The Court upheld a substantial judgment in favor of the decedent's survivor against the tractor-trailer operator upon the following facts which were held to constitute negligence: (1) failure of the driver to put out any flares or other warning devices, when he had such flares in his possession; (2) no effort was made to forewarn or caution others using the highway that a dangerous condition existed; (3) the driver made no attempt to stop his truck in a place of safety upon the shoulder of the highway; and (4) the driver allowed his vehicle to run out of gas while charged with knowledge that his gas supply was running low. The foregoing were pointed out by the Court as establishing negligence sufficient to sustain the verdict. Here there is evidence from which the jury might reasonably conclude the existence of each of the foregoing elements except the running low on gas supply, as to which the instant case shows a voluntary, rather than an involuntary, stopping.
The remaining question to be considered in the instant case is whether or not the evidence before the lower Court established contributory negligence on the part of plaintiff's deceased wife as a matter of law, which, if true, would sustain the order appealed from. But issues of contributory negligence are even more charily removed from jury determination by the process of summary judgment than issues of original negligence on the part of a defendant. In *301 some of the cases hereinbefore quoted from, the language used specifically include issues of contributory negligence as "ordinarily not susceptible of summary adjudication either for or against plaintiff." Such issues should be "for the jury's determination." See Buck v. Hardy, supra; Shapiro v. F.W. Woolworth, supra; Beikirch v. City of Jacksonville Beach, supra. For a general discussion of the subject in line with the foregoing, see 30 Fla.Juris. 341.
In a wrongful death case there exists a presumption that the decedent exercised ordinary care for his or her own safety. Murden v. Miami Poultry and Egg Co., 113 Fla. 870, 152 So. 714; Town of Palm Beach v. Hovey, 115 Fla. 644, 155 So. 808.
The deposition of Hancock, driver of the front Mary Carter truck, seemed to indicate that when he first pulled up to stop he had his bright headlights on, that he changed them to dim when the Willoughby truck was approaching, but thereupon about the time he began talking to the Willoughby truck driver, he turned them on bright again, at the same time turning on his four blinker lights. It could be a reasonable, deducible inference that the decedent, driving her Volkswagen along the country road at a normal rate of speed, was blinded, at least temporarily so, by the strong lights facing her, to such extent that she could not see the Willoughby truck parked ahead in the same lane of travel that she was going. And also, the headlights of the rear Mary Carter truck, even though not directed toward her in full intensity, might conceivably have added to her blinded confusion and inability to see the Willoughby truck in time. There is in the record evidence that the Volkswagen did veer off to some extent to the right just before the impact. The rule, governing generally such factual situation, is expressed in 8 Am. Juris.2d 279, in the following language:
"Attempts to charge a motorist with negligence or contributory negligence as a matter of law where, blinded by the lights of a parked vehicle, he continues ahead and collides with that vehicle have been generally unsuccessful, most of the cases holding that the question, under all the circumstances, including charges that the vehicles displaying the bright lights were improperly parked in other respects, was for the trier of the facts, and sustaining a verdict for the blinded motorist."
Appellees cite only one case in their brief, that of Petroleum Carrier Corp. v. Robbins, Fla. 1951, 52 So.2d 666, and that case deals with contributory negligence. However, the facts in the Petroleum Carrier case are in such divergence from the facts here as to deprive it of any authoritative value. In that case the Supreme Court pointed out that decedent, at the time of impact with the heavy truck parked on the highway, was travelling at reckless speed in violation of the State speed limits of 50 miles per hour at night on a "misty, rainy night in disregard of the hazards that might arise from poor visibility"; also "that immediately before the mishap two red reflectors were in place west of the trucktrailer, the direction from which the car was coming," one of which reflectors was knocked off the road by decedent in passing. In the Petroleum Carrier case, the deceased was driving so fast that his passenger car knocked the eight-ton trucktrailer 21 feet away and drove the double wheels and bumper on one side of the trailer up under the tank, and completely demolished his own car.
The facts in Petroleum Carrier aforesaid completely distinguish it from the instant case on the question of contributory negligence. Petroleum Carrier does set forth the general statement in the second headnote that "a motorist must drive at such speed as to be able to stop or control his automobile within the range of his vision, whether it be by nighttime or daylight." But when measured in the light of the facts of that particular case, and when the language of Mr. Justice Whitfield in Ex Parte Amos, Fla. 1927, 93 Fla. 5, 112 So. 289, text 294, *302 is considered, the quoted headnote loses its value as authority here. Justice Whitfield's lengthy admonition in the Amos case will be carried in the margin,[6] but what it amounts to is that "general statements of law in an opinion must be given such weight only as the facts in that particular case warrant." So we hold Hancock and his employer, Mary Carter, to be not entitled to entry of summary judgment.
Tompkins, the rear Mary Carter truck driver, was also made a defendant and the motion for summary judgment included him along with Mary Carter and Hancock.[7] He has appealed to this Court along with his two co-defendants, but we make the same holding regarding him as we do regarding Hancock. He, like Hancock, parked his heavy motor equipment, approximating the same size and gross tonnage as Hancock's, completely on the pavement; he left his lights on shining brightly, he never descended from his seat in the cab, either to put out flares, or to beam his flashlight, or otherwise to warn other approaching drivers. Even when he saw the Volkswagen approaching (and apparently he was the only one of the three drivers who ever saw the Volkswagen before the impact), he still did not do anything, even in those few seconds, to attempt to flag the deceased down, either by blinking his headlights, or otherwise. On the contrary, he was troubled by a "bad water-pump" on his truck and when he first noticed the headlights on the Volkswagen approaching from 200 to 250 yards away, he just sat still and "prayed" that she would not crash into the Willoughby truck. A more material assist from Tompkins might conceivably have averted a tragedy.
We hold, therefore, that the able Circuit Judge was in error in granting the summary judgment motion and that the order appealed from should be accordingly 
Reversed.
LILES, Acting C.J., and KANNER (Ret.), J., concur.
NOTES
[1] There were no requests for admissions.
[2] It must be borne in mind that the sufficiency of the evidence to make a jury question of liability as to Willoughby and his driver Sutton was not before the lower Court; only liability of Mary Carter and either or both of its drivers.
[3] In Crovella: "It is elemental that if the evidence raises the slightest doubt upon any issue of material fact, if it is conflicting, if it will permit of different reasonable inferences, or if it tends to prove the issues, it should be submitted to the jury as a question of fact to be determined by it. Williams v. City of Lake City, Fla., 62 So.2d 732."

In Jacobi: "In determining whether a motion for summary judgment should be granted in a particular case, the rule is that if the evidence before the court on the motion `raises the slightest doubt upon any issue of material facts, if it is conflicting, if it will permit of different reasonable inferences, or if it tends to prove the issues, it should be submitted to the jury as a question of fact to be determined by it,' and the motion should be denied."
In Harrison: "We review the entry of the summary judgment in the light of the well-established principles of law that summary judgment is a drastic remedy to be granted only where the movant is entitled to judgment as a matter of law; that if there is an issue of fact, and the slightest doubt remains, summary judgment should not be granted; that the record supporting summary judgment is closely scrutinized and all inferences of fact from the proofs must be drawn against the movant; and that the court should indulge all proper inferences in favor of the party against whom summary judgment was entered."
In Skaf's Jewelers, Inc.: "If there is an issue of fact and the slightest doubt remains, summary judgment should not be granted. The record supporting summary judgment should be carefully searched, and all inferences of fact from the proof submitted must be drawn against the moving party." (Emphasis supplied.)
[4] In Farrey: "The courts have been necessarily cautious in those instances where the rule (motion for summary judgment) was invoked in tort actions because of the well-settled principle that the question of negligence is ordinarily one to be resolved by a jury from the particular facts and circumstances in each case."

In Saunders: "It is recognized that summary judgments must be cautiously granted in negligence cases. The issues of negligence and contributory negligence are ordinarily for a jury's determination. Southern Express Co. v. Williamson, 66 Fla. 286, 294, 63 So. 433, 436, L.R.A. 1916C, 1208; Turner v. Modern Beauty Supply Co., 152 Fla. 3, 6, 10 So.2d 488, 490."
In Buck: "* * * issues of negligence, including such related issues as contributory negligence, are ordinarily not susceptible of summary adjudication either for or against the claimant, but should be resolved in the ordinary manner. 6 Moore's Federal Practice (2d Ed.), par. 56.17(42), p. 2232. Warring v. Winn-Dixie Stores, Inc., Fla.App. 1958, 105 So.2d 915, supra."
In Shapiro: "It is clear that summary judgment should be cautiously granted in negligence cases since the issues of negligence and contributory negligence are ordinarily for the jury's determination. Turner v. Modern Beauty Supply Co., 152 Fla. 3, 10 So.2d 488; Saunders v. Kaplan, Fla.App. 1958, 101 So.2d 181." In Gwong: "Motion for summary judgment in negligence case is ordinarily denied." (First headnote).
In Beikirch: "Some of the greatest problems perplexing the courts with regard to summary judgments seem to have arisen in negligence actions. * * * The general rule, of course, is that issues of negligence or contributory negligence are to be determined by the jury and ordinarily should not be disposed of by the Court in a peremptory manner."
In Grall: "Courts are cautious in granting summary judgments in negligence cases, the issue of negligence being ordinarily for the determination of a jury. Town of Mt. Dora v. Bryant, Fla.App. 1961, 128 So.2d 4. Doubt on issues of negligence, including such related issues as contributory negligence, should always be resolved in favor of a jury trial. Bess v. 17545 Collins Ave., Inc., Fla. 1957, 98 So.2d 490."
[5] (Of course, this would not be true if such violation could not have been the proximate cause of the accident. But that situation does not here exist.)
[6] "It is a maxim not to be disregarded that general expressions in every opinion are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit where the very point is presented for decision. The reason of this maxim is obvious. The question actually before the Court is investigated with care and considered in its full extent. Other principles which may serve to illustrate it are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated. It cannot be reasonably expected that every word, phrase, or sentence contained in a judicial opinion will be so perfect and complete in comprehension and limitation that it may not be improperly employed by wresting it from its surroundings disregarding its context and the change of facts to which it is sought to be applied, as nothing short of an infinite mind could possibly accomplish such a result. Therefore, in applying cases which have been decided, what may have been said in an opinion should be confined to and limited by the facts of the case under consideration when the expressions relied upon were made, and should not be extended to cases where the facts are essentially different. When this rule is followed, much of the misapprehension and uncertainty that often arise as to the effect of a decision will be practically avoided. (Voluminous cases cited).

"What is said in an opinion upon a point not raised or properly involved cannot control in a subsequent case where the very point is presented for decision. Union Tank Line Co. v. Wright, 249 U.S. 275, 39 S.Ct. 276, 63 L.Ed. 602. General words used in a judicial opinion should be construed with such limitations as are required by a reference to the facts in the case."
[7] Very likely the motion as to Tompkins could fail because he was included in the same motion with other named defendants as to whom the motion has been held to be not good, on the well-known principle of an omnibus motion, but it is unnecessary to decide that point here because of our holding that the motion should have been denied on the merits even as to Tompkins.