227 So.2d 79 (1969)
Lewis W. SHOLLENBERGER, Appellant,
v.
Samuel J. BASKIN, Individually and As Trustee d/b/a Starlite Motel, Cocoa Beach Paladium, Inc., d/b/a Starlite Motel, U.S. Hotel Corporation d/b/a Starlite Motel, Stanley Bring, Individually and d/b/a Starlite Motel, Lucky Lacouture, Individually and d/b/a Starlite Motel and Carriage House, Inc., Appellees.
No. 2132.
District Court of Appeal of Florida. Fourth District.
September 24, 1969.
Rehearing Denied October 28, 1969.
Cecil C. Martin, of Fishback, Davis, Dominick, Troutman & Salfi, Orlando, for appellant.
Frank R. Pound, Jr., and John W. Williams, of Howell, Kirby, Montgomery & D'Aiuto, Rockledge, for appellees.
WALDEN, Judge.
Plaintiff appeals from the entry of a final summary judgment in favor of defendants on the question of liability. Undoubtedly, the trial judge thought this case was ripe for summary judgment in view of plaintiff's counsel's stipulation that no other evidence could be presented on *80 the issue of liability. In this regard, we note that even when all possible evidence is submitted in a summary judgment, if a fact question is presented, it is for the jury to resolve, not the judge.[1]
Plaintiff alleges in his complaint that he fell from a defective ladder furnished by the defendants. On a motion for summary judgment by the defendants, the trial court had before it, besides the pleadings, depositions of the plaintiff, Mrs. Lynn Hooks and Mr. Gatha Cottee. The plaintiff's efforts to produce the ladder were to no avail.
Plaintiff was employed by a national communications network and assigned to head up a communication pool to cover the John Glenn orbital space flight from Cape Kennedy that finally took place in April 1962, after several delays.
Preparation began in December 1961 and included the renting of office space in the Starlite Motel (a defendant herein). Plaintiff installed various electronic equipment and other necessary office furnishings concomitant with this operation in the motel room. The management of the motel was well aware and acquiesed to the use the room was put to. Furthermore, it was necessary to install a disc-type antenna on the roof of the motel above the room. The motel manager instructed plaintiff how and where to ascend to the roof and furnished a ladder to proceed.
On the morning of February 10, 1962, plaintiff went on the roof to re-set the antenna which had blown over during the night. As plaintiff began his descent he fell, was seriously injured, and was knocked unconscious. When he gained his consciousness days later, he was unable to recall anything after he began his descent.
The evidence indicates that the ladder was not new and was worn but now worn so badly as to be unusable. Plaintiff testified:
"Q. Well, we might say it was a pretty well beaten up ladder or good shape or what?
"A. I'm sure that if it had been pretty well beaten up that I wouldn't have used it or I wouldn't have tried to use it.
"Q. Well, you looked over the ladder then before using it?
"A. I did not examine it with the proverbial fine tooth comb.
"Q. Well, did you observe any rotten areas about it? A rotten area is one that means 
"A. If I  if I would have observed something rotten about it I would not have used it. I used it on account of because it was there and we were using it.
"Q. Well, Mr. Shollenberger, you didn't inspect the thing then?
"A. Not with any fine tooth comb, no.
"Q. But you did look it over?
"A. Well, we tried it on Thursday. We  "
One witness testified she saw the fall.
"Q. Do you know what it was that drew your attention to the outside of the restaurant?
"A. The man falling.
"Q. Tell us what you saw outside the window, please.
"A. Actually I saw, I'd say, out of the corner of my eye, the man pretty near the top of the ladder and just falling back with the ladder following him. That's all I saw.

*81 "Q. Had you seen the man on the ladder prior to that time?
"A. I don't believe so."
Another witness testified the ladder was standing against the motel near where plaintiff was lying immediately after the accident and that rungs were missing from the ladder.
"Q. Now, did you see a ladder lying there on the ground?
"A. I saw a ladder, but it wasn't lying on the ground.
"Q. Where was it?
"A. It was standing up.
"Q. Tell me about that ladder.
"A. As well as I can remember, two rungs  about the third and fourth rungs from the top of the ladder, I believe, to the best of my knowledge, were broken. On the metal strip on the side of the roof on the side of the building, you could see where pressure had been applied, because there was a place that was black, and it made a stripe down the side a ways, and it looked like it had flipped and slid. In other words, if somebody applies pressure and you grab the side  it looked like he grabbed the side and he went around the inside of the ladder and fell, but the ladder was still standing when I got there.
"Q. And the only rungs broken were at the top of the ladder and not at the bottom of the ladder?
"A. I believe it was at the top of the ladder. I am not sure. Whether there were other rungs missing, I don't recall.
"Q. But you remember looking up and seeing some rungs at the top busted?
"A. Yes, and also the marks on the metal."
This testimony raises inferences pointing to defects in the condition of the ladder. We believe it may be fairly inferred from the record that two rungs gave way causing the fall.
On a motion for a summary judgment, the trial court must determine if the movant has carried his burden of proof. Holl v. Talcott, Fla. 1966, 191 So.2d 40. The defendant had the duty to demonstrate conclusively that no real fact issue exists and there is no evidence upon which the plaintiff could rely. Harvey Building, Inc. v. Haley, Fla. 1965, 175 So.2d 780; Producers Fertilizer Co. v. Holder, Fla.App. 1968, 208 So.2d 492. The trial court must not only consider the evidence, such as pleadings, interrogatories, depositions, affidavits, etc., but from this evidence it must be able to conclude that no reasonable inference would give rise to a disputed fact issue. Bermudez v. Jenkins, Fla.App. 1962, 144 So.2d 859. All inferences from the evidence before the trial judge are liberally construed in favor of the opposing party, in this case the plaintiff. Graff Enterprises v. Canal Insurance Co., Fla.App. 1968, 213 So.2d 738.
We conclude there are conflicts raised by the evidence in the case sub judice as to the defectiveness of the ladder which may or may not have caused the accident. This raises a disputed fact question, based upon conflicting inferences drawn from the testimony; as such, it is the jury that must resolve the issue and summary judgment is inappropriate at this juncture.
We reverse and remand with instructions to vacate the final summary judgment in favor of defendants.
Reversed.
OWEN, J., and FARRINGTON, OTIS L., Associate Judge, concur.
NOTES
[1] Booth v. Mary Carter Paint Co., Fla. App. 1966, 182 So.2d 292; Harvey Building, Inc. v. Haley, Fla. 1965, 175 So.2d 780.