698 So.2d 652 (1997)
Sam CAPITANO, Appellant,
v.
CSX TRANSPORTATION, INC., Appellee.
No. 96-02373.
District Court of Appeal of Florida, Second District.
September 5, 1997.
*653 Robert J. Beckham, Jacksonville, and Joel D. Eaton of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, for Appellant.
Robert Wallace, Tampa, for Appellee.
DANAHY, Acting Chief Judge.
In October 1992 the appellant, Sam Capitano, was injured while in the employ of the appellee, CSX Transportation, Inc. He sued CSX for negligence in causing his injuries pursuant to the Federal Employers' Liability Act, 45 U.S.C. §§ 51-60. Denying Capitano's motion for directed verdict on the issue of comparative negligence, the trial court submitted the issue of comparative negligence to the jury despite Capitano's contention that there was insufficient evidence of his own negligence to support such an instruction. The jury found CSX 68% negligent[1] and Capitano 32% comparatively negligent. The jury awarded $252,000 in damages which was reduced by 32% to $171,360 in the final judgment. Capitano timely filed a motion for judgment in accordance with his prior motion for directed verdict on the comparative negligence defense and a motion seeking a final judgment in the full amount of the jury's award. These motions were denied and he appealed. Although the question of negligence, including comparative negligence, is usually a question for the fact-finder, especially where the facts are undisputed but differing inferences may be drawn, see Booth v. Mary Carter Paint Co., 182 So.2d 292 (Fla. 2d DCA 1966) (summary judgment), we find that the instant case is that rare kind where there is no reasonable view of the evidence the jury could take to support a finding that Capitano was comparatively negligent. We agree with Capitano that his motion for directed verdict on the comparative negligence issue should have been granted. Accordingly, we reverse for entry of an order awarding him the full amount of damages that the jury found.
The facts surrounding the injury are basically undisputed. Capitano, the conductor of a three-man train crew, was taken to his work site with his engineer and a brakeman in a van driven by Edward Triner. The work site was a wide-open sandy area of the train yard next to the train tracks. Triner stopped the van parallel to and several feet to the left of the engine of the train on which the crew was going to work. The three-member crew exited the van and went to the train while Triner waited in the van. The engineer climbed into the engine but Capitano and the brakeman returned to the van. The brakeman reentered the van so he could be driven to the back of the train where he had some details to check on before the crew could continue their work. Capitano started walking from the van to the dispatch tower that was some distance away in front of the van at the other end of the train yard. While walking away from the van in the sandy area and when he was about forty to fifty feet in front of the spot where the van had been stopped when he left it, he was struck by the van and injured. The point of impact was the front of the van toward the passenger side.
There was some argument about whether Capitano had taken the route described above from the engine to the van accompanied by his brakeman or whether the brakeman went back to the van alone and Capitano took a direct and diagonal path from the engine to the point of impact with the van. Capitano and the brakeman both testified that they went to the van together and then Capitano proceeded in a straight line from *654 the right side of the van toward the dispatch tower. The van was idling but began to roll forward. Triner, the driver of the van, testified that he didn't see what path Capitano had taken; in fact, he had not seen him at all until his passenger shouted a warning. The brakeman, who was at the time the passenger in the front seat of the van, saw the van rolling toward Capitano but didn't realize until too late that Triner might be unaware of Capitano's presence.
CSX claims that these facts support an inference that Capitano was comparatively negligent. CSX claims this inference is drawn from Capitano's failure to watch out for the van behind him which he knew would be moving to take the brakeman in the opposite direction to the end of the train. CSX also contends that another inference can be drawn, supporting Capitano's comparative negligence, in that he may have taken a diagonal path from the engine toward the dispatch tower instead of going first to the van with his brakeman and then straight from there toward the dispatch tower. This diagonal path, CSX contends, could have caused him to be hidden in his approach to the front of the van by putting him behind the post at the right side of the van's windshield and, therefore, out of the van driver's field of vision. The arguments for these two inferences find no support in the record.
First of all, and based on Foulk v. Perkins, 181 So.2d 704, 706 (Fla. 2d DCA 1966), Capitano had no duty to look out for danger behind him when there was no reason to apprehend any. As Capitano walked toward the dispatch tower and placed himself in front of the stopped van, he reasonably expected it to go in a direction directly opposite from him and without striking anything or anybody because there was sufficient room in the wide-open spaces of the train yard for Triner to maneuver the van. He also knew that it was a clear day and that he could easily be seen from the van. There was no reason for him to expect that it would run him down from behind on a clear day in this wide space of the train yard with no obstacles between him and the van.
As for the second inference that CSX claims is possible, that a diagonal path from the engine toward the dispatch tower without a stop at the van might have screened Capitano from the van driver's view, the only evidence before the jury of the path Capitano took was from Capitano and his brakeman. They both agreed that the path Capitano took was not a diagonal one from the engine toward the dispatch tower but a straight line from the engine to the van and then a ninety-degree turn to the right and a straight line from the right side of the van toward the dispatch tower. Triner's testimony added nothing to support any other inference because Triner said merely that the last time he saw Capitano before he hit him Capitano was in the engine of the train. Triner also stated on cross examination that he did not know the path that Capitano took to get to the point at which he was struck. Since the testimony of Capitano and his brakeman was uncontroverted and neither impeached, discredited, contradictory within itself nor physically impossible, the trial court had no discretion to disregard it as sufficient support for Capitano's motion for directed verdict on the comparative negligence issue. See State v. Bowden, 538 So.2d 83 (Fla. 2d DCA 1989); see also Merrill Stevens Dry Dock Co. v. G & J Investments Corp., 506 So.2d 30, 32 (Fla. 3d DCA), review denied, 515 So.2d 229 (Fla. 1987).
Since there was no evidence from which reasonable inferences could be made to support a theory of comparative negligence on the part of Capitano, it was error for this issue to be submitted to the jury. We reverse the final judgment and remand with instructions to enter a judgment in Capitano's favor for the full amount of the damages found.
BLUE and LAZZARA, JJ., concur.
NOTES
[1] CSX was found liable for the negligence on a theory of respondeat superior based on the actions of two of its employees. Specifically, the driver of the van was found 48% negligent and the passenger of the van 20% negligent.